CHANCERY. ## Lexington and Ohio Railroad Company *vs* Bridges.

*Case* 137.    ERROR TO THE LOUISVILLE CHANCERY COURT.

*Trusts.    Limitation.    Mistakes.    Lapse of time.*

*September 24.*    JUDGE SIMPSON delivered the opinion of the Court.—Chief Justice Marshall did not sit in this case.

Case stated in the bill.

BRIDGES having an unsatisfied judgment against the Railroad Company, upon which an execution had been returned no property, brought this suit in Chancery, to obtain satisfaction of his judgment, making various individuals defendants, alledging that some of them were indebted to the company on account of the reception of illegal dividends, others on account of stock subscribed, and that others had acted as Directors and Managers of the affairs of the company, and by declaring a distribution of the profits, when no profits existed, had by their illegal management of a fund set apart by the charter for the payment of the debts, of which they had the control,

rendered themselves individually liable to the creditors of the company.

The individuals who acted as Directors at the time the dividends were made, rely in their defence on the following grounds: First, that there were nett profits to divide, and consequently the declaration of the dividends was legal, and authorized by the charter.

Secondly, if there were no profits to divide among the stockholders, that in declaring the dividends they acted in good faith, under a mistaken conception it may be of what constituted profits, and without a full knowledge of the actual state of the affairs of the company, having been mislead by an incorrect exposition of its condition presented by the officer regularly appointed and authorized under the charter to keep its accounts, but without any wrongful intention on their part, and that therefore they are not individually responsible.

In the third place, they plead and rely upon the statute of limitations.

Lastly, they aver that other suits had been brought by the company's creditors, previous to the institution of this one, for the recovery of various demands, exceeding the whole amount of the dividends in controversy, and that the suits so brought will exhaust the whole fund, and leave nothing for the complainant.

This case presents substantially the same facts that were contained in the case of *Gratz vs Redd*, (4 *B. Monroe*, 178.) The Court in that case decided that there were no nett profits at the time the dividends were made. For the reasons there assigned, which it is now unnecessary to recapitulate, we entertain the same opinion. This point in the defence must therefore be regarded as untenable, and not open for further debate or discussion.

The liability of the Directors to the creditors of the company, on account of having misapplied this fund, if not expressly adjudged, was intimated in that opinion. The order directing the payment of these dividends out of the trust fund, was deemed illegal on the part of the Directors who concurred in the act, and Gratz, one of the Directory who concurred, being also a stockholder, and having received the money, was held accountable for

RAILROAD COM-
PANY
vs
BRIDGES.

the dividends in his hands so illegally paid over. We are not of opinion that in directing the payment of these dividends, there was any thing fraudulent on the part of the Directory. They no doubt believed that they were acting legally and properly. They supposed that profits existed, when in reality there were none. If they are to be held individually liable on account of this mistake, it must be on the ground, that if it were an error of judgment, by accepting the office they professed to be in the possession of the skill and qualifications necessary for a faithful discharge of all its duties, and are therefore not exonerated when the injurious act results from the absence of such qualifications, or if it were a mistake of fact, that in accepting the position they occupied, they assumed the discharge of certain duties to the company and to those persons dealing with it, the faithful performance of which required the exercise on their part of unremitting vigilance in relation to the condition of the matters intrusted to their control, as well as a reasonable and prudent discretion as to the manner in which they were managed, and that they failed to use as much vigilance on the occasion as the responsibility of their position imposed on them. We are satisfied, however, that if they were guilty of negligence to any extent, it is not of that gross and palpable character that would render their conduct so reprehensible as to subject them to the imputation of a personal or even a legal fraud.

Assuming for the present, without however deciding the point, that they might, by the exercise of a proper vigilance, have ascertained the fact to be as it actually existed, that there was nothing properly subject to division, and that their failure in this respect imposes on them a personal liability for the fund so illegally disposed of, we are next to inquire whether the statute of limitations has any application in a case of this kind, so as to discharge them from this liability.

It is contended that the statute can have no operation in this case, for various reasons. In the first place, it is

In cases of direct, express and continuing trusts of a purely equitable nature, the Chancellor does

argued that the Directory were trustees, holding and managing the fund misapplied for the benefit of the creditors, and that in cases of trust, the statute cannot be relied

upon. It is true, that in cases of direct, express and continuing trusts of a purely equitable nature, the statute of limitations is not applied by the Chancellor. But where the trust is not strictly of this character, where it is limited in its duration, or where the party seeking redress has a legal remedy, and a Court of law has concurrent jurisdiction with a Court of equity, the rule does not apply; but the statute is permitted to have its operation whether the suit is brought at law or in chancery. It may be that for the injury here complained of, if the Directors were personally liable, a creditor could have maintained his action at law against them. He could bring his action at law against the company for his debt— it was a legal demand. If the persons entrusted with the funds of the company for the payment of debts misappropriated those funds, and he was injured by the act, why should he not have a right to an action on the case against them for the injury sustained by their illegal conduct? In the case of *Rowe* vs *Williams,* decided at the fall term, 1846, (*ante* 202,) it was held by this Court, that the Sheriff was liable in an action on the case, to the security in an injunction bond, for the injury he had sustained by being rendered liable for the debt, by the misconduct of the Sheriff, in the management of the execution against the principal debtor. That case was decided upon the principle that the plaintiff had a direct interest in the management of the execution. That the breach of duty on the part of the Sheriff, whereby this interest was injuriously affected, was an injury to a legal right, by the violation of a legal duty. The same reason would seem to apply in this case. The creditors had a direct interest in the management of this fund. Its proper management was a legal duty. The complainant had a legal right to the demand sued for, and any injury which he sustained by a breach of duty on the part of the Directors, was actually an injury to a legal right by the violation of a legal duty.

But whether a creditor could or not maintain an action on the case against the Directors, for a breach of duty operating to his prejudice, it is entirely certain that the trust imposed on them by their office, was not a continu-

---

**RAILROAD COMPANY**
*vs*
**BRIDGES.**

not apply the statute of limitations; but where the trust is not strictly of that character, and where the party seeking redress has a legal remedy, and a Court of law concurrent jurisdiction, the rule does not apply; the statute will be applied in a Court of chancery as in a Court of law.

Might not a creditor of an incorporated company maintain a suit at law against the trustees of the company for mismanagement in improperly declaring dividends and paying out the funds of the company to the stockholders when there was in fact no profits to divide?—QR.

The trust confided to the trustees of an incorporated company, who were only in office for a

Railroad Company vs Bridges.

*limited time, was not a continuing trust, but terminated with their term of office, though they were again eligible & actually re-appointed, the latter appointment was also temporary, and therefore not such a continuing trust as withdraws it from the operation of the statute of limitation.*

ing and subsisting one, but one that terminated with the expiration of the period for which they were chosen, and that the tenure of their office being limited, so was the trust that it devolved upon them. By the provisions of the charter, the Directors are to be elected annually. The duration of the trust that they undertake is limited in its nature. They remain in office but a single year. After they go out of office they cease to be trustees. Being no longer trustees there is no continuing trust, either as it respects creditors or stockholders. Should they be re-elected and remain in office, it will be the commencement of a new trust, and not a continuation of the old one. They will hold the office alone by their new appointment, which both vests the power and creates the trust. It is, therefore, perfectly apparent that this trust is a limited and not a continuing trust, and therefore, not such a trust as is withdrawn from the operation of the statute of limitations.

In the case of the *Bank of the United States* vs *Dallam, &c.* (4 *Dana*, 574,) it was decided that the statute of limitations applies to only such actions of debt as are founded on contracts in fact, and not to such obligations as are imposed either expressly or constructively, by mere law. On the strength of that decision it is contended that the obligation in this case on the Directors, was imposed by the charter; that if a suit at law had been brought against them they could not have relied upon the statute of limitations, and having been sued in chancery they should not be permitted to avail themselves of it. That decision was made upon the particular phraseology of the statute of limitations, which by its language, is made to apply only to such actions of debt as are "grounded upon any lending or contract without specialty." By the statute which was the foundation of the suit in that case, it was provided that the estate of every shareholder should be liable for the payment of all demands contracted by the corporation, upon the failure of the incorporate funds to discharge the same. The statute imposed a direct liability, to enforce which at law, an action of debt was the appropriate remedy.

In this case the statute imposes no personal liability upon the Directors for the payment of the debts of the company. Their liability, if any exist, results from their own wrongful act, and the appropriate remedy at law against them, would be, if they are liable at law, not debt, which could not be maintained, but an action on the case, against which the statute of limitations can always be relied upon, so that there is an essential difference, both as it regards the foundation of the liability and the appropriate action at law, between that case and this one.

It is, however, contended that the statute of limitations has no application where a fraud has been perpetrated or a mistake exists, until a discovery is made of the commission of the one or the existance of the other. The exemption from the operation of the statute, has some-times been limited to cases of fraud only. But according to the decisions of this Court in *Crane* vs *Prather*, (4 *J. J. Marshall*, 75,) and *Frankfort Bank* vs *Markley*, (1 *Dana*, 373,) the statute does not apply where either fraud or mistake exists, until their existance is discovered. As the Directors were not guilty of fraud, but committed a mistake in distributing the fund, what effect is thereby produced upon the application of the statute in their favor? When the existance of a mistake is said to relieve the remedy for the redress of the injury occasioned by the mistake from the effect of the statute, what kind of a mistake is contemplated? Is it not a mistake made by the complaining party, under which he labors, which has worked him an injury, and to redress which he cannot be said to have a cause of action until its existance is discovered?

The mistake relied upon in this instance is of a different character. If it can be regarded as having the effect ascribed to it, still the party who seeks to shelter himself from the operation of the statute under such an excuse, must show that by the exercise of that vigilance, which the law requires on the part of every creditor, he could not have made an earlier discovery of the matter relied upon. Now it is apparent that by the proceedings on the part of the company in the fall of the year 1837, the report

---

RAILROAD COM-
PANY
*vs*
BRIDGES.

The statute in-corporating the Lexington and Ohio Railroad Company impo-ses no personal liability upon the Directors for the payment of the debts of the com-pany. If any a-rises, it must be the result of their wrongful acts, when case would be the appropri-ate remedy, to which limitation might be plead.

To enable a com-plaining party to avoid the effect of the statute of limitation on the ground of failure to discover the mistake, which is made the grounds of re-covery, he must show an exercise of a proper de-gree of vigilance in the pursuit of his right.

RAILROAD COM-
PANY
vs.
BRIDGES.
of the committee on this subject, the reference to arbitrators and their award made thereon, as much in relation to these dividends and the action of the Directory in ordering their distribution was ascertained and made publicly known, as has hitherto been made known or exhibited, all of which could have been known by any creditor who would have availed himself of the ordinary means of acquiring information on such subjects.

The statute of limitations is founded upon the soundest principles and the wisest policy. It should be permitted to have its effect in all cases, where its operation would not work evident injustice. There is a very cogent reason in favor of its operation in this case.

The Directors of the Lexington & Ohio Railroad Company could not be made responsible beyond the amount of the funds which was wrongfully distributed to the stockholders, and are entitled to have that am't. refunded if made liable.
It is very evident that the liability of the Directors cannot, if they be liable at all, exceed the amount of the fund improvidently distributed by them, and that if they should have to pay the amount of that fund to the creditors, they would in equity, be entitled to reclaim it for their indemnity, from the stockholders who had received it. Now the right of the stockholders to rely upon the statute of limitations against any suit brought to reclaim these dividends is unquestionable. Indeed it may well be doubted whether they would be liable to any proceeding for this purpose, on the part of the Directors, except an action of assumpsit for money had and received, and whether proceeded against by the creditors or the Directors, it is perfectly evident that they might avail themselves of the limitation to defeat a recovery. Great injustice would then be done the Directors, if the statute of limitations would not operate in their favor when sued for this fund, but would operate against them when a suit was brought by them to have it refunded. The hardship and injustice appear more manifest when it is recollected that their liability, if it exists at all, arises from a mere error, and not from any wilful or fraudulent misconduct.

The Directors of said company may rely upon the lapse of time in a proceeding in chancery by a judgment creditor of the company to render
We have, therefore, come to the conclusion that the Directors have a right to rely upon the statute of limitations in this case, and that its effect is to discharge them from all personal liability to the complainant, more than five years having elapsed from the time the action of the Directors in relation to these dividends was publicly

known before he instituted this proceeding against them. The doctrine of this decision on this point, we think is fully sustained by the principles of the case of *Kane* vs *Bloodgood et al.* (7 *Johnson's Chy. Rep.* 89,) and the cases there referred to.

But as the decree of the Chancellor is against some of the stockholders for the dividends received by them, as well as against those persons who acted as Directors when such dividends were declared, and as other creditors are alledged to have a prior lien on this fund in the hands of the stockholders, by having brought suits to reach it, before the commencement of this suit by the complainant, and such creditors having been made defendants, and the demand of the Northern Bank, the President, Directors & Co. of said Bank being one of the said creditors, having been by the decree postponed to the complainant's demand, we are next led to enquire into the propriety of the action of the Chancellor in refusing to set aside the order taking the complainant's amended bill for confessed, and to permit the answers of the defendants to be filed. On the 15th of October, 1844, the amended bill was filed making the complainants in those prior suits defendants. Process on this amended bill was executed in November following. The cause was set for trial on the 13th of December of the same year; was heard on the 17th, and the decree rendered on the 20th of the same month. On the 3d day of January, 1845, during the same term, the Northern Bank and other defendants, made a motion to file answers to the amended bill, which answers were then offered. They filed in support of their motion, the affidavit of M. C. Johnson, their counsel. He states in his affidavit that he was employed by the defendants, in the month of November, immediately after the service of process upon them, to file their answer. That he forthwith sent for a copy of the amended bill, which was transmitted to him. That he was compelled to go to Cincinnati on business, and on his return had to attend the Federal Court at Frankfort, and the Fayette Circuit Court having had a chancery and criminal term, which had been continued from time to time, until the 23d of December, he had been almost

RAILROAD COMPANY
vs
BRIDGES.

them personally responsible on account of an improper distribution of the money of the Co. as dividends, when there was in fact no profit to divide. See *Kane* vs *Bloodgood,* (7 *Johnson's Chy. Rep.* 89.)

RAILROAD COM-
PANY
*vs*
BRIDGES.

constantly engaged in professional business. That being in the habit of attending to chancery business in the Circuit Court, it did not occur to him that immediate attention to this case was indispensably necessary, at least until after the expiration of the Fayette term, before which time arrived he was informed that the decree in question had been rendered against his clients. Now when it is considered that the defendants were prompt in their application to counsel, who having been closely occupied by his professional engagements, from the time he was spoken to, until the decree was rendered against his clients, was prevented from attending to the preparation of their answer; and when it is, moreover, considered that a very short period of time had elapsed between the service of the process on the amended bill and the hearing of the cause, and that the answers were tendered immediately afterwards, during the same term, it seems to us that it would not have been an unreasonable indulgence to have sustained the motion, and allowed the answers to be filed. And inasmuch as the decree has to be reversed, and as it may be material so far as the Directors are concerned, that the funds in the hands of the stockholders should be appropriated to the payment of debts according to their priorities, and as the decree in this case is against said fund in the hands of three of the stockholders, the defendants, on the return of the cause to the Court below, are allowed to file their answers, so that it may appear whether any other creditor has proceeded against this fund before the complainant, so as to have acquired a previous lien thereon.

The decree is also against Robert Wickliffe, and the question occurs, whether or not there is any error in it, so far as he is concerned. The complainant having filed an amended bill during the progress of the cause, requiring the President and Directors of the Railroad Company to answer and set forth the stockholders, if any, who had subscribed for stock and had failed to pay the amount subscribed; the President of the company in pursuance of that call upon him, filed an answer specifying various individuals who had subscribed for stock, and having failed to pay the same, it had been forfeited for such

It was error to decree against a stockholder of the Lexington & Ohio Railroad Company, when it was alledged that his stock had been forfeited to the company. If the stock was forfeited he was absolved from further liability to the company or its creditors.

failure. The defendant, Wickliffe, was one of the persons named. Thereupon the complainant filed an amended bill, alledging that it appeared by the answer of the Railroad Company filed in this cause, that various persons were indebted to said company for and on account of stock subscribed, among whom was the defendant, Wickliffe; that he still owed on that account the sum of $20,000, and prayed a decree against said defendants for the payment of his judgment at law. Wickliffe having failed to answer, the amended bill was taken for confessed, and a decree rendered against him for the full amount of the complainant's demand. As the amended bill making Wickliffe a party, referred to and was based upon the answer of the Railroad Company, and as that answer stated that Wickliffe's stock had been forfeited, we are of opinion that it was improper to render a decree against him, without having first ascertained that his stock had not been regularly forfeited under the charter, so as to absolve him from all liability on account thereof, and that he was still responsible for it to the company or its creditors, and that in this respect the decree is erroneous.

Wherefore, the decree of the Chancellor is reversed, and cause remanded for further proceedings in conformity with this opinion.

*Robinson & Johnson and Robertson and Woolley* for plaintiffs; *Guthrie and Ballard* for defendant.