JUDGE LINDSAY
delivered the opinion oe the court.
The first-named appeal is prosecuted from the judgment of the Franklin Circuit Court, and the latter from that of the Warren Court of Common Pleas; but as the questions involved are almost identical, they will for convenience be considered and determined together.
To each of the petitions a general demurrer was sustained, and the parties failing to plead further, judgments were rendered dismissing them absolutely, and we are now called upon to determine whether said petitions set out facts constituting causes of action.
From them it appears that in the year 1865 the Bank of Bowling Green went into operation under a charter approved June 2, 1865, and that during the time it continued in business the defendants were members of its board of directors; and further, that before the institution of these actions said bank, upon the petition of the defendants or some of them, had been declared a bankrupt by proper legal proceedings, and was insolvent.
*615 The Society of Shakers alleges that on the 22d of February, 1869, its agent, U. E. Johns, deposited with the bank on special deposit seventy-two thousand four hundred and fifty dollars in bonds, fully described in a memorandum incorporated into the petition, and that the bank had failed upon demand to return $55,660.40 of said bonds; also that it had failed to account for $9,702.63 collected on interest-coupons attached thereto.
Davenport alleges that on the 3d of March, 1866, he placed in the bank on special deposit nine Warren County bonds, of one thousand dollars each, which by reason of the premium for which they would sell in the market were of the value of eleven thousand five hundred dollars, and the bank had failed upon demand to return all or any of such bonds.
The Society of Shakers charges the conversion of its bonds in the following language: “ Plaintiffs state that all the aforementioned bonds, aggregating in value the sum of $55,660.40, were wrongfully taken from plaintiffs’ package of special deposit by the officers of the Bank of Bowling Green, and by them converted to the use and emolument of said bank by sale as aforesaid, without right or authority from these plaintiffs, or any of them; and of such wrongful conversion and appropriation defendants and each of them had, or could have had by the most ordinary diligence and investigation, ample notice.”
Davenport alleges that his bonds had been “wrongfully appropriated by said Bank of Bowling Green, and converted to the use and emolument of said bank, forwarded to its regular correspondents, and by them sold, and the proceeds of sale credited to the Bank of Bowling Green, and paid on checks or drafts of said bank, of all of which defendants and each of them had notice, as well from the ledgers, books, and accounts of said bank as from its correspondents, reconcilements, and statements.” And further, “ that said bonds were wrongfully *616 appropriated, as aforesaid, to the use and benefit of said bank, and without authority from this plaintiff, and that of such wrongful conversion and appropriation defendants and each of them had, or could have had by the most ordinary diligence, ample notice.” It is also substantially charged in each petition that the defendants, acting as directors, “did on various occasions declare dividends when the condition of the bank did not justify the same, and so appropriated to themselves, they being the largest stockholders, large sums of money actually realized from the conversion of the plaintiffs’ property as aforesaid.”
Upon the facts as thus stated this court must determine whether or not appellees, or any of them, are personally bound to make good the losses resulting to appellants from the unauthorized and wrongful conversion by the bank of their special deposits.
In the adjudication of these causes it is not necessary that we shall critically inquire into the duties and obligations resting upon bank directors to look after and protect the interest of special depositors, from whom the corporation, represented by the directory, receives no compensation. It is sufficient to say that special deposits are mere naked bailments, and that neither the bank nor its directory undertake to exercise any greater care in their preservation than the depositor has the reasonable right to suppose is exercised in keeping the bank’s property of like description.
It can not be doubted, however, that if the deposit is lost by reason of the gross negligence or the willful inattention of the directors, the bank is responsible therefor, upon the well-established doctrine that a mere depositary is liable for gross negligence; and as the directory is the corporate government of the bank, and in the legal sense is the corporation itself, the negligence or inattention of its members can and ought to be imputed to the bank. But the liability of the bank in these *617 actions does not depend alone upon the averment of want of care and fidelity upon the part of the directors. It is specifically charged that the deposits were sold by its officers, and the proceeds thereof converted to its use and emolument with the knowledge of the directors.
The facts thus alleged imply the conversion by the bailee of the bailor’s goods, for which at the common law an action of trover would lie.
The question here presenting itself for our decision is whether the directors, who had knowledge of these alleged. wrongful sales, can be held to answer personally for the de-¡ posits so converted. Appellees insist that they can not be so held, because of the want of privity between the depositors and themselves. They concede that for gross negligence or mismanagement upon their part, resulting in loss to the bank, they may be held to account to it, but urge that, inasmuch as their undertaking was to the corporation, they can be proceeded against by it alone, and that these appellants must look to the bank and not to them.
This position is plausible, but it can not, in our opinion, be maintained. Bank directors are not mere agents, like cashiers, tellers, and clerks. They are trustees for the stockholders; and as to their dealing with the bank, they not only act for it and in its name, but, in a qualified sense, are the bank itself. It is the duty of the board to exercise a general supervision over the affairs of the bank, and to direct and control the action of its subordinate officers in all important transactions. The community have the right to assume that the directory does its duty, and to hold them personally liable for neglecting it. (Morse on Banking, 76-77.) Their contract is not alone with the bank. They invite the public to deal with the corporation, and when any one accepts their invitation he has the right to expect reasonable diligence and good faith at their hands; and if they fail in either, they violate a duty they owe not only to *618 the stockholders, but to the creditors and patrons of the corporation. (Hodges v. New England Screw Co., 1 R. I. 312.)
An honest administration of the affairs of the bank, and slight diligence at least in preventing special deposits from being wrongfully converted to its use, were legal duties, which these directors were under obligations to the special depositors to perform; and as these obligations grew out of their implied contract that they would perform such duties, there is a legal privity between the parties. This doctrine was recognized by this court in the case of the Lexington & Ohio R. R. Co. v. Bridges (7 B. Mon. 556), in which case it was held that the directors of that corporation by accepting their positions assumed the discharge of certain duties not only to the company, but to persons dealing with it, and that if they misappropriated the funds intrusted to their control, and a creditor was damaged by the act, he had a right of action against them for the injury resulting from their illegal conduct. "Whenever there exists a legal duty to perform or omit to do an act, the law will imply a promise by the person upon whom the duty rests that he will discharge it, and between him and all persons having the legal right to demand its performance a privity of contract exists. (Chitty on Contracts; 1 Parsons on Contracts.)
The right to recover in these actions does not rest alone upon the contract of bailment with the bank, and the implied contract, resulting therefrom, that the directors would not by gross negligence or tacit acquiescence permit the deposits to be converted by the bank.
The petitions disclose a state of facts constituting an unlawful conversion of personal property by the bailee, and also such conduct upon the part of appellees as makes them parties to the tort committed by their principal.
It is immaterial whether or not an action of trover will lie against the ^ directors, as well as against the bank. If they *619 have been guilty of a breach of duty amounting to a tort, they may be held to account, although they can not be sued jointly with the bank in an action in the nature of trover and conversion.
Treating the bank as the bailee, and these appellees as its mere agents, it is clear that if they directed the sale of the deposits, or knowingly permitted them to be sold, they thereby became participants in the wrong.
“To maintain trover the defendant must have converted the property to his own use, or have done some other act with a wrongful intent, express or implied.” (2 Hilliard on Torts, chap. 16, sec. 8, p. 284.) “If one person disposes of the goods of another for the benefit of a third person, this is a conversion.” (Bacon’s Abridgment, title “Trover,” sub. B.) “Every unlawful intermeddling with the goods of another is a conversion, it being a disposition pro tanto of the goods of another as if they were the goods of the intermeddler.” (Ibid.; also Young v. Moore, 7 J. J. Marsh. 646.) In the well-considered case of Poole v. Adkisson et al. (1 Dana, 110) it was held that the agent who disposed of the slaves of another in obedience to the instructions of his employer, acting in good faith, and ignorant of the complainant’s rights, was nevertheless liable to the true owner; and in the learned dissenting opinion it was not argued that his liability would have been an open question had he acted in the matter with knowledge of the fact that the slaves were at the time the property of the party suing, instead of his employer.
These appellants allege that their bonds were sold by the officers of the bank, and the proceeds paid out in the satisfaction of claims against it, and in the payment of dividends to its stockholders; and that of all this appellees had notice.
Having notice, it was their duty, and they had full power in the premises, to prevent the sale. Failing in this, their subsequent action in directing the proceeds, or some portion *620 thereof, to be paid out in the shape of dividends to the stockholders, including themselves, was a ratification of the conversion, which they had theretofore wrongfully permitted.
Considering their alleged willful failure to discharge a plain duty, their ratification of the unauthorized sales, and the appropriation to themselves of portions of the proceeds arising therefrom, there seems to be no valid reason why, even under the rules of pleading at the common law, they might not be held liable with the bañk in an action of trover and conversion ; but if there be well-founded doubt as to this conclusion, an action on the case would undoubtedly lie to compel them to make good a loss resulting from a palpable failure upon their part to discharge a plain legal duty, the performance of which the complainants had the right to demand at their hands, and the non-performance of which was the direct and immediate cause of the loss-. It follows therefore that each of the two petitions under consideration sets out facts constituting causes of action, and, this being the case, under our rules of civil procedure the general demurrers should have been overruled.
In said petitions we have stated the facts out of which the legal obligation of appellees arose, the nature of the obligation, the breach of it, and the damages resulting from that breach. The petitions are good according to the strictest rules of common-law pleading. (1 Chitty on Pleadings, side page 136.)
It is further objected that the allegation of notice is so far qualified as to render insufficient the averment of its existence. It is stated that appellees “and each of them had, or could have had by the use of the most ordinary diligence and investigation, ample notice.” It is also alleged by Davenport that they each “ had notice as well from the ledgers, books, and accounts of said bank as from its correspondence, reconcilements, and statements.”
*621 It is tbe duty of bank directors to use ordinary diligence to acquaint themselves with the business- of the bank, and whatever information might be acquired by ordinary attention to their duties they may, in controversies with persons transacting business with the bank, be presumed to have. They can not be heard to say that they were not apprised of facts shown to exist by the ledgers, books, accounts, correspondence, reconcilements, and statements of the bank, and which would have come to their knowledge except for their gross neglect or inattention.
It is not necessary in many cases to show directly that the directors actually had their attention called to the mismanagement of the affairs of the bank, or the misconduct of the subordinate officers. It is sufficient to show that the evidences of the mismanagement or misconduct were such that it must have been brought to their knowledge. unless they were grossly negligent or willfully careless in the discharge of their duties. If it shall turn out upon the trial of these actions that the ledgers, books, etc., of the bank showed that the special deposits of these appellees were being sold, and that this fact would have been discovered by appellees by the use of ordinary diligence, then the presumption of actual knowledge will arise. It follows therefore that the allegation of notice is sufficient.
It is further insisted in the case of the United Society of Shakers that it is manifest that all the defendants are not liable, and that by reason of the misjoinder of parties defendant the general demurrer was properly sustained. An examination of section 120 of the Civil Code of Practice will show that the improper joinder of parties defendant is not a ground for general demurrer; and under the 144th section of the New York Code, which is similar to section 120 of our own, the courts of that state have so held. (The People v. Mayor of New York, 28 Barbour, 240.)
*622 The objection may be made available either by a rule requiring the plaintiff to elect which of the defendants it will proceed against, or by proper instructions by the court when the cause goes to the jury.
The case of Hawkins v. Phythian (8 B. Mon. 515) does not authorize the deduction that because there is a different and higher degree of diligence required of the president than of the other directors of the bank, they can not be jointly sued in these actions. In the case cited the declaration did not show that the injury complained of resulted from the joint act of the defendants, as is alleged in these cases.
The judgments sustaining the general demurrers and dismissing the two petitions must be reversed.
•The special demurrers filed in the Davenport case were not formally passed upon by the court of common pleas, because of its action upon the general demurrer; still they are now before this court, and it seems that the best interests of the parties litigant demand that they shall be noticed in order that the mandate of this court may set out as nearly as possible the principles upon which further proceedings are to be had.
Special demurrer No. 1 should be overruled, as it is not necessary that the officer who sold the bonds shall be named. It is sufficient that they were converted to the use of the bank, and that these appellees participated in the wrongful act, or knowingly permitted it to be done.
No. 2 should be overruled, as the petition does sufficiently allege the conversion complained of.
No. 3 should also be overruled, as the petition does not blend a cause of action growing out of a tort with a cause of action founded on contract.
No. 4, which goes to the amended petition, should be sustained.
None of the matters of fact set up in that pleading can be *623 regarded as the proximate cause or causes of the injury complained of. It is the conversion of appellant’s bonds that gives to him a right of action, and neither the failure of appellees to discharge the duties owing by them to the stockholders and general creditors of the bank, nor the fraudulent representations made by them as to the amount of stock that had been subscribed for or paid in, can in any way affect this right.
No. 5 should also be sustained. It is unnecessary and improper to plead conclusions of law.
No. 6 should be overruled so far as it is objected that that petition does not sufficiently allege that appellees had the actual custody of the bonds, as such possession is not necessary to make them liable for the conversion; but it should be sustained as to all those portions of the petition charging acts of omission upon the part of appellees, whereby they violated the duty owing by them to the stockholders and general creditors of the bank. It is possible that some of the circumstances thus alleged may be admissible as evidence to show that appellees had knowledge of and assented to the conversion of appellant’s bonds; but mere circumstances, from which controlling and essential facts may be deduced, ought not to be embodied in pleadings. The relevancy of each circumstance should be passed upon by the court when the parties offer to prove it, and it should be left to the jury to determine as to the weight to which it is entitled when proved, uninfluenced by the previous determination by the court that the circumstances stated, if proved, authorize or do not authorize the conclusions drawn by the pleader.
For reasons already given, special demurrers Nos. 7, 8, and 9 should be overruled.
The two causes are remanded, with instructions to overrule the general demurrers, and for further proceedings in each case conformable to the principles of this opinion.