## Case No. 8,974.

### MAIN v. MILLS.

### [6 Biss. 98.] [1]

Circuit Court, W. D. Wisconsin. May, 1874.[2]

BANKS—CAPITAL STOCK—UNLAWFUL DIVIDENDS—STATUTE OF LIMITATIONS—BANKRUPTCY—STATUS OF ASSIGNEE.

1. The capital stock of a moneyed corporation constitutes a trust fund for the payment of its debts, and its officers have no right to make a

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2 [Reversed in part by the circuit court (case unreported).]

dividend unless there are actual profits over and above all losses.

[Cited in McCann v. First Nat. Bank, 112 Ind. 360, 14 N. E. 255.]

2. An officer of the corporation is bound to know the condition of its affairs, and has no right to receive a dividend unless legitimately earned; if he does, it may be recovered by the assignee in bankruptcy.

3. In deciding whether a dividend was rightfully made, the transaction must be viewed from the stand-point of that time, and not in the light of subsequent events. Notes or overdrafts by persons then considered abundantly good should not be counted as losses, because they afterwards proved such.

[Cited in McCann v. First Nat. Bank, 112 Ind. 360, 14 N. E. 255.]

4. Statute of limitations does not begin to run, in such a case, until the fraud is discovered by the assignee.

5. The general statute of limitations of Wisconsin does not apply to such a case, but it is controlled by section 35, c. 138, Rev. St. 1858.

6. The assignee, for the purpose of this suit, stands precisely in the position of the corporation itself, and has no greater rights, nor does it make any difference whether there were but two stockholders or a larger number.

This was an action by W. S. Main, assignee of the Bank of Madison, to recover dividends claimed to have been wrongfully received by the defendant [Simeon Mills], while the bank was actually in an insolvent condition.

W. F. Vilas and H. S. Orton, for plaintiff.

Geo. B. Smith and P. L. Spooner, for defendant.

BLODGETT, District Judge (charging jury). The controverted questions of fact to be passed upon by you are comparatively few. It is conceded that on or about the 16th of April, 1860, defendant Mills and one James L. Hill united under the general banking law of this state in the organization of a bank by the corporate name of the Bank of Madison, with a capital stock of $25,000, of which each held one-half; that said bank commenced the transaction of the usual classes of business carried on in this city by banking corporations and bankers, and continued in said business until the 7th day of October, 1873, when it was adjudicated bankrupt in this court on its own petition; that up to about the middle of January, 1869, defendant continued to hold half the stock of said bank and acted as its president; that during the time aforesaid, said bank paid the defendant dividends on his stock as follows: January 1, 1865, $6,084.66; January 1, 1866, $1,630.37; July 1, 1866, $1,740.28; January 1, 1867, $3,003.65; July 1, 1867, $815.55; January 1, 1868, $2,088.14; July 1, 1868, $1,565.57; January 1, 1869, $1,014.91; and that dividends to the same amount were declared and paid to said Hill, who held the other half of the stock at the same time. It was also admitted that about the middle of January, 1869, defendant sold to said Hill his stock and interest in said bank at a price much below par. But I think it may be taken as an admitted fact that the stock was treated between the parties to this transaction, Hill and Mills, as of little intrinsic

value at that time; that the defendant retained the presidency of the bank until January, 1871, although the evidence tends to show that his connection with it was merely nominal after he sold his stock.

It is also admitted that during the time the bank continued in business, regular reports of its financial condition were made as required by law to the bank comptroller of this state, and filed in the office of the secretary of state, and that these reports are mostly, if not all, signed, and purport to be sworn to, by the defendant as president.

The plaintiff has also given evidence tending to show that at the time these dividends were paid the capital stock of the bank had become so impaired by losses from bad debts and mismanagement that no actual profits were made from the business of the bank; that at the time when each of these dividends was paid the current losses of the bank by hopelessly bad and suspended debts were such as to have absorbed and sunk all the profits of the business, so that in fact no dividend was really earned and payable to stockholders.

Upon the facts thus admitted to be true or claimed to be proven, plaintiff insists that he is entitled to recover from defendant the dividends which he has from time to time received from January 1, 1865, to January 1, 1869, inclusive. To this the defendant interposes by way of defense: (1) A general denial of the plaintiff's right under the law to recover upon the facts set forth in the complaint; (2) a denial of those facts, which puts the plaintiff upon proof of such as have not been admitted on the trial; (3) that as to part of said dividends the right of action accrued more than six years before the commencement of the suit, and is therefore barred by the statute of limitations.

It is the province of the court to instruct you upon some of these questions of law which arise upon the facts which you may find in the case. There is, perhaps, at this day no better established rule of law than that the capital stock of a moneyed corporation, whether it be a banking, insurance, mining or manufacturing company, is to be treated and deemed as a trust fund for the purpose of securing the payment of the debts of the corporation. In banks the capital stock stands as a guaranty to the extent of its amount, for the payment of the creditors of the bank. Theoretically under your law this stock and a certain degree of personal liability of the stockholders is pledged, first to secure the payment of the circulating notes of the bank, and after that to the general creditors. But it being admitted that there is no circulation in this case, the general creditors may be said to be the parties directly interested in this fund.

The officers of such a corporation have no right to make dividends to stockholders unless there are profits to be divided, over and above all losses, because the necessary result of so doing is to deplete the capital fund. The capital stock being, as I said, a trust fund, the first duty of the officers of the bank is to keep this fund intact and unimpaired. If there are gains and losses, the gains should be set off against the losses so far as may be necessary to keep the capital fund whole. All net profits above what are requisite for that purpose, may, as a general rule, be rightfully divided to stockholders. And while it is not necessary for me to say in this case how far in my opinion a stockholder who is not an officer might be protected in the receipt of dividends, I will say that officers, who know and are bound to know the condition of the affairs of the bank, have no right to take dividends unless legitimately earned and on hand.

Applying these general principles to the case before us, you see that it becomes an important inquiry for you, and really the only material and important issue of fact for you to determine in this case, whether the bank had gains or profits which it rightfully could divide to its stockholders at the time the dividends in question were made.

You have heard the testimony bearing upon this branch of the case. The plaintiff has put in proof, which as he claims, shows that at the time each of these dividends was declared the losses, or suspended debts which ultimately proved to be losses, greatly exceeded the gains then on hand, and he therefore insists that those dividends were wrongfully made to the defendant and should be returned by him, because he, being an officer of the bank, was bound to know that these debts were either hopelessly lost, or so precarious and uncertain of collection that the bank had no right to consider them as part of its living available assets.

The defendant, on the contrary, insists that at the time these dividends were paid no serious losses had been sustained; that while some paper was suspended or overdue, and some accounts overdrawn, yet the debtors were all substantially solvent and good for their indebtedness to the bank. And it is for you to say whether the proof satisfies you that at the time any or all these dividends were paid the bank had made or had not made gains over and above its losses which authorized the making of the dividends.

If you are satisfied from the evidence that at the time these several dividends, from January 1, 1865, to January 1, 1869, were made, or either of them, the losses of the bank did at the time exceed the gains, so that in fact there were no profits over and above losses, then you should find for the plaintiff as to such of said dividends as you are satisfied from the evidence were made when there were no profits over and above losses to divide.

But in passing upon this testimony you must view it as far as possible from the standpoint of the transaction itself, and not

in the light of subsequent revelations. The proper inquiry is, would a sagacious, prudent banker, in the light of all the facts disclosed to you in the evidence, have considered Darwin, Parkins, and the other persons whose names appear in the testimony as debtors of the bank, as solvent, and the debts of the bank against them as good and collectible at the time these dividends were made?

From the nature of the business the assets of a bank must all the time be represented by what is due to it from its debtors. The officers of a bank cannot collect in all its bills receivable on some special day, and then say, Now we will make a dividend. We know we have no bad debts because no body owes us, and therefore we have a right to divide our surplus. This rule would be impracticable, and if acted upon would prevent any dividends being paid. But there is a constant demand for the exercise of sound judgment and sagacity as to the standing and value of its paper. The bank officer is not only bound to be honest, but he is bound to possess the requisite ability for the ordinary exigencies of the business he undertakes. He is not expected to be infallible, nor to make no mistakes, but he must use the caution of an ordinarily prudent man engaged in such business. Your own good sense and experience in life will teach you that it does not necessarily follow, because a man has overdrawn his account at a bank or has not paid his note at maturity, that the debt is therefore bad and should be charged up to profit and loss. It may be the overdraft is allowed because the bank officer knows, or thinks he knows, that the drawer is abundantly good, although it is probable that a banker who habitually, to any considerable extent, allowed overdrafts and overdue papers to remain unadjusted would soon lose his reputation as a safe and competent man in the business, and deservedly lose the confidence of the community. As I said before, you must as nearly as possible put yourselves in the place of the managers of this bank at the time these dividends were paid, and decide as well as the proof will enable you whether these debts now claimed to have been losses then, ought to have been so considered at that time by this bank officer and stockholder. Ought these debts to have been classed as doubtful or desperate at the time? If they ought, common prudence would have dictated the withholding of a dividend at such times. And if made at such times an officer of the bank occupying the responsible position in its affairs which was occupied by the defendant, would have no right to excuse payment of a dividend, because he is bound to know all the facts about its affairs which are disclosed by its books and records, or can be ascertained on close inquiry. He cannot be heard in a court of justice to say he did not know these things, because it is his duty to know

them, and the law will conclusively presume he did know them. From what I have said as to the facts you must find, in order to sustain the plaintiff's case, you will readily infer that unless those facts are found by you from the proof the defendant is not liable.

I come now for a moment to speak of the defense of the statute of limitations urged by the defendant. And upon this point I instruct you that the statute pleaded is a valid bar to the recovery in this case of all dividends which were paid more than six years before this suit was commenced.

This relieves you from the consideration of the circumstances surrounding the payment of all the dividends paid prior to January 1, 1868, but the rules I have laid down seemed equally necessary to the proper understanding of the rights of the parties as to those paid subsequent to that time, and I have therefore reserved the consideration of this branch of the defense to this time.

The bank, as a corporation, is bound to keep its capital stock intact, and the banking law has many provisions intended to secure that result. If there is any reduction of the capital funds, the bank can bring suit to recover back such funds, from those who have appropriated them wrongfully, and in case the bank refuses or neglects to do so, a creditor or person aggrieved may bring such suit, but the cause of action accrues to the bank and the statute begins to run when the misappropriation is made.

For the purposes of this suit the plaintiff, as assignee of the bank, stands just where the bank would have stood if it had brought the suit. His rights are no greater and no less. The bankrupt law [of 1867 (14 Stat. 517)] has clothed him with no special powers in regard to this claim. It originated, if at all, long before any act of bankruptcy was committed, and it is undoubtedly true, as a practical fact, that while the management of the bank remained in the hands of those officers who had declared and received the dividends in question, it is equally true that the right of action accrued to the bank as a corporation on the wrongful receipt of each dividend shown in the proof to have been taken by the defendant when there were no profits. This right of suit accrued to the bank as a corporate entity, because of the reduction of its capital stock, which it was bound to keep whole, and the plaintiff in this case has, in my opinion, only succeeded to whatever right of action the bank itself had, and therefore the statute applies in this case.

The fact that Mills and Hill were the only stockholders and only officers in this bank, does not change the legal aspect of the questions raised in this case. A bank corporation is just as much an artificial body, and has the same rights and duties, with two stockholders, as though it had a hundred stockholders. The ownership of the stock in

a bank, under the law of this state, is a fact of which any person can, by due inquiry, obtain information. The law requires lists of stockholders to be filed semi-annually in the office of the state bank comptroller and in the office of the register of deeds of the county where the bank is situate, so that all depositors can ascertain, not only who the stockholders were, but how many there were. The reports were only admissible to show the act of defendant in representing the stock as remaining intact, and also as tending to show the extent to which he participated in the actual management of the bank affairs.

Much testimony has been admitted on the trial of this case which, perhaps, was not necessary to elucidate the issues on which you are to pass. I have already called your attention to these issues, and it is enough to say that you ought not to consider in this case any testimony which does not tend to prove those issues.

Verdict for amount of dividends paid out after January 1, 1868, with interest.

NOTE. On error to the circuit court (Drummond, J.), this case was partially reversed on two grounds, no written opinion being given: 1. It was a fraud on the depositors of the bank, for Mills and Hill the sole stockholders and managers to divide between themselves, under the name of profits, money belonging to the capital or to the depositors, when no profits were in fact made. The fraud was not discovered until the failure of the bank and the appointment of an assignee, but was concealed from the depositors by Mills and Hill. The statute of limitations did not begin to run till the fraud was discovered by the assignee, and this on general principles of law. 2. The "six years" statute of Wisconsin did not apply to the case, but the 36th section of chapter 138 (2 Tayl. Rev. St. 1871, p. 1628), which declares that "the title" shall not affect actions against directors or stockholders of a moneyed corporation or banking association, to recover a penalty or forfeiture imposed, or to enforce a liability created by law, but such actions must be brought within six years after the discovery by the aggrieved party, if the facts upon which the penalty or forfeiture attached, or the liability was created. Judge Drummond held that it was not material how the liability was created, whether by statute or by the general principles and usages of law. The point first decided was afterwards affirmed by the supreme court of the United States, in the case of Bailey v. Glover, 21 Wall. [88 U. S.] 342. See the case of Gratz v. Redd, 4 B. Mon. 178, as to dividends wrongfully paid. The charge of Judge Blodgett was not otherwise disapproved, and the case was remanded for computation of the full amount of the dividends thus unlawfully received, judgment to be entered accordingly. See further, that payments of dividends out of capital are not legal unless specially authorized by the statute. Painesville & Hudson R. R. Co. v. King, 17 Ohio St. 534; Pittsburg & C. R. Co. v. Allegheny County, 63 Pa. St. 126. For a discussion of the point that the capital stock is a trust fund for the creditors, see Ang. & A. Corp. (2d Ed.) 475; Scammon v. Kimball [Case No. 12,435].