W. A. LATIMER, Receiver of FIRST NATIONAL BANK, Sedalia, Missouri, Appellant, v. EQUITABLE LOAN AND INVESTMENT ASSOCIATION, etc., Respondent.

### Kansas City Court of Appeals, February 6, 1899.

1. **Corporations:** KNOWLEDGE OF AGENT ACTING FOR HIMSELF: AGENT ACTING FOR HIMSELF AND CORPORATION. If an agent of a corporation act adversely to the corporation and for himself, the corporation is not chargeable with his uncommunicated knowledge; but if he act for himself and the company, the corporation is chargeable

2. ——: AGENT: SCIENTER: INNOCENT PURCHASER. On the evidence in this case it is found that the cashier of a bank acted both for himself and the bank in placing certain stock with the bank as security for his antecedent debt and the bank was not an innocent purchaser.

3. **Building and Loan Association:** STOCK ISSUED TO PROMOTERS: DIVIDENDS: ULTRA VIRES. Directors of a building and loan association can not issue special stock to themselves for services as promoters, and the payment of dividends thereon is *ultra vires* since the holders of stock in such associations have only the right to surrender their stock and thus withdraw their proportion and share of the profits.

4. **Corporations**: DIVIDENDS: ACTION TO RECOVER. Where directors have authority by statute to declare dividends when earned, they have no right to declare such dividends on their own stock to the exclusion of other stock, especially where there are no profits to divide, and such dividends may be recovered.

5. **Building and Loan Associations**: DIVIDENDS: COUNTER-CLAIM. The doctrine that a dividend declared and paid after an investigation is recoverable, has no application in this case, and where a building and loan association is sued to recover the surrender value of its stock, it may set off unlawful dividends paid to the plaintiff against such surrender value.

*Appeal from the Pettis Circuit Court.*—HON. G. F. LONGAN, Judge.

AFFIRMED.

MONTGOMERY & MONTGOMERY for appellant.

(1)   The bank having taken the five shares of original stock in the defendant corporation for value and without notice of any defect in the title of J. C. Thompson or any equities existing between Thompson and the defendant, and having complied with all the requirements of the by-laws of the defendant corporation, was entitled to recover the cancellation value thereof.   Watson v. Printing Co., 56 Mo. App. 150.   (2)   Thompson, although cashier of the bank, in the negotiation of the loan and the deposit of the stock, was acting in his own interest, adversely to his principal and through another officer of the bank, and the bank is not chargeable with his noncommunicated knowledge of any facts derogatory to his title to the stock.   Mechem on Agency, sec. 719; Johnston v. Shortridge, 93 Mo. 231; Bank v. Lovitt, 114 Mo. 525; Morawetz on Corp., sec. 540.   (3)   The dividend declared and paid, after a proper investigation of the company's condition, is irrevocable, even though it should afterwards turn out that the company had not earned the dividend or was at the time insolvent.   Morawetz on Corp.,

sec. 446; Beach on Corp., sec. 550 and note 3, p. 733, and note, p. 734; Mfg. Co. v. Langsdon, 46 N. W. Rep. 312.

J. H. RODES and BARNETT & BARNETT for respondent.

(1) J. C. Thompson, while acting for himself in the transaction of pledging the five shares of original stock, was also cashier and business manager of the bank, acting for said bank. He represented both himself and the bank. Stone Cutter Co. v. Myers, 64 Mo. App. 527; Withers v. Bank, 67 Mo. App. 115. (2) The bank has already received more than the value of these shares. Only $273 has ever been paid in on these shares, including what Latimer paid after the failure of the bank, and the shares have earned but very little interest or profits; $500 was paid on these shares and the bank received this money. (3) The officers of the bank knew that this $500 was paid on this stock. Mr. Thompson acted for the bank as well as for himself and he knew it. (4) The rule that a dividend declared and paid after a proper investigation of the company's condition and the preparation of a balance sheet in good faith, is irrevocable both as to the company and its creditors (Morawetz, sec. 446), is unquestioned. It can not be said that this dividend was declared in good faith upon the preparation of a balance sheet. (5) The finding in this case is for the right party.

SMITH, P. J.—This is a suit in equity, the object of which was to recover of the defendant, a loan and investment association, incorporated under the laws of this state, the surrender value of five shares of stock which were issued by it to one Thompson, and for the appointment of a receiver and an accounting, etc. There was a trial resulting in a decree for defendant from which the plaintiff has appealed. The decree, we think, was for the right party and should be upheld. If it be conceded that the plaintiff as the receiver of the First National Bank has, by assignment, acquired the title

STATEMENT.

to said shares of stock in the defendant association, yet his action must fail.

It appears from the undisputed evidence that on the first day of April, 1890, the defendant issued certificates for five shares of its stock to said Thompson and a like number to each of its other six directors. It further appears that some time after the issue of the certificates to Thompson he indorsed and delivered the same to the said bank as collateral security for certain indebtedness of his to it. Later on, that is to say on the nineteenth day of January, 1892, the directors of the defendant declared a dividend of $500 on each of the said five shares of stock. In payment of this dividend on Thompson's shares of stock a warrant was issued by defendant directed to him as treasurer and payable to him at said bank. It appears from the recitals therein that it was issued for dividend on original stock. It was paid by the bank in a few days after its issue. It does not appear that the defendant had any notice that Thompson's stock had been hypothecated by him to the bank.

It further appears that on September 7, 1894, the defendant's board of directors by resolution declared that it had been ascertained that the said warrants so issued to the directors for the amount of said dividend were wrongfully paid and charged to the defendant's dividend account, and that the said directors be requested to refund the said amount with interest.

There is no pretense that Thompson's stock was ever transferred to the bank on the books of the defendant in the manner required by the latter's by-laws, or at all. So far as the defendant knew, or its books showed, Thompson was the owner of the stock at the time defendant paid the dividend thereon. The question now is, whether the bank acquired Thompson's stock for value and without notice of any equities existing between him and the defendant.

Although at the time the transaction took place, by which the defendant acquired the stock, Thompson was cashier of the bank, yet if in that transaction he acted for himself and in his own interest, adversely to that of the bank, and through another one of its officers, therefore the bank is not chargeable with his uncommunicated knowledge. Johnston v. Shortridge, 93 Mo. 231; Bank v. Lovitt, 114 Mo. 525. But on the contrary, if Thompson, in such transaction, acted for both the bank and himself, the bank is chargeable with his knowledge. Stone Cutter Co. v. Myers, 64 Mo. App. 527; Withers v. Bank, 67 Mo. App. 115. It appears from the evidence that Thompson managed and controlled the bank without the knowledge of the directors and as completely as it was possible for him to do in his capacity of cashier. He drew at pleasure on the funds of the bank and borrowed the same without any restriction.

*CORPORATIONS: knowledge of agent acting for himself: agent acting for himself and corporation.*

It is true, Thompson testified that some time after April, 1890, he had occasion to borrow some money from the bank and that he pledged the stock in question to it as collateral security for a loan of between $8,000 and $9,000, and that the negotiation was made with Mr. Newkirk, who was president of the bank. But little heed can be given to this testimony because it indubitably appears from the books of the bank that no such loan was made at the time mentioned by him in his testimony, but, on the contrary, it appears that if the stock was pledged to secure any one of his notes it was that for $8,320 which was a renewal and consolidation of other smaller notes which had been given to the bank a year or two before for borrowed money. The conclusion is irresistible that the stock was pledged to secure an antecedent debt and that no loan was primarily made on the stock as collateral security. We think the unmistakable inference

*——: agent: scienter: innocent purchaser.*

to be drawn from all the facts and circumstances in evidence is that Thompson in pledging the stock acted for both the bank and himself. The bank was not an innocent purchaser of the stock for value. Its relation as holder of the stock was as to defendant not different from that of Thompson, had he not parted with his title to it.

Our attention has been called to no statute then in force authorizing the issue by defendant of the five shares of stock to each of its directors as promoters, as Mr. Thompson testi-

BUILDING and loan associa-tion: stock is-sued to pro-moters: divi-dends: ultra vires.

fied was done. Such stock seems to have been issued to them as a mere gratuity. It was not subscribed for by them. It was irregular, to say the least of it. Nothing is seen in the statute authorizing a dividend on this partic-ular stock to the exclusion of the other shares. The statute does not seem to contemplate that building and loan associa-tions shall dispose of their earnings in any such manner. By what authority did the directors, though promoters, cause to be issued to themselves this special stock, and then to declare a dividend of one hundred per cent thereon, whether or not any instalment had been paid thereon? From whence did this stock derive its extraordinary preference that was accorded to it by the directors? The dividend was most manifestly unlawful.

The scheme provided in article 9, chapter 42, Revised Statutes, under which defendant was organized, did not con-template the payment of dividends on stock. Under defend-ant's charter, already referred to, the holders of its stock could. at any time withdraw from it in the manner therein provided and thus withdraw their proportionate share of the profits, if any there was. R.S. 1889, sec. 2810. In the absence of express statutory authority a general power to declare and pay dividends out of the profits of the business of the association does not exist. Endlich on Building Ass'n, sec. 327. The act of the directors in paying the dividend in

Latimer v. Equitable Loan & Inv. Ass'n.

question was *ultra vires*. They appropriated the funds of the association to the payment of an unlawful dividend on their own stock.

Even if the directors had been authorized by statute, as they were not, to declare dividends when earned, yet

CORPORATIONS: dividends: action to recover.

they had no right to declare a dividend as they did on their own stock to the exclusion of the other shares, and especially so since they knew, or were bound to know, that there were no profits of the association to divide. In making such dividend they were guilty of negligence of that gross and palpable character that rendered their conduct so reprehensible as to subject them to the imputation of a legal fraud. Thompson received the unlawful dividend and has not returned it to the defendant's treasury, and he is therefore liable to defendant for the amount thereof. Cook on Corp., sec. 550; Beach on Priv. Corp., sec. 609-610; Railway v. Bridges, 7 B. Mon. 556; Main v. Mills, 6 Biss. 98.

That the rule invoked and relied on by the plaintiff to the effect that a dividend declared and paid after a proper

BUILDING and loan associations: dividends: counterclaim.

investigation of the condition of the company is irrevocable, even though it turn out afterwards that the company had not earned such dividend, can have no application to a case like this is, it seems to us, an indisputable proposition. And as the plaintiff stands in Thompson's place, occupying no better position than he would were he suing to recover the surrender value of the stock, it ought to return the amount of the unlawful dividend received by Thompson, or, which is the same thing, the defendant is entitled to interpose this claim as a set off against that of the plaintiff's for the surrender value of the stock. And as to whether or not the bank received the dividend is of no importance, or, if it were, it is sufficient to say that it could have received the same had it chosen to do so.

It is conceded that the defendant's counterclaim for $175, evidenced by receiver's certificate, is a valid counterclaim.

It is therefore plain that the amount of the counterclaims of the defendant are clearly in excess of the surrender value of the plaintiff's stock, and for that reason the decree of the lower court was for the right party and must be affirmed.   All concur.