FARMERS & MERCHANTS BANK, Respondent, v.
WILLIAM LOYD et al., Appellants.

St. Louis Court of Appeals, March 12, 1901.*

1. **Banks and Banking**: KNOWLEDGE OF CASHIER IMPUTED TO BANK. Where a bank cashier makes purchase of a certificate of stock as such cashier, he acts within the scope of his authority and the knowledge that he has of the condition of the stock must be imputed to the bank.

2. ———: ———. And in the case at bar, the bank having purchased the certificate with the secret knowledge that the assessment had not been forwarded to the association, took the certificate at its own risk to make good to the association the delayed assessments and to realize the full withdrawal value of the certificate.

*This case was received too late to be placed in chronological order.

Appeal from Wayne Circuit Court.—*Hon. F. R. Dearing,* Judge.

REVERSED AND REMANDED.

*M. R. Smith* with *Durham & Davis* for appellants.

(1) Can the bank, by denying that it was the agent of the Phoenix Loan Association, avoid the payment to Durham of the full amount it agreed to pay him for his stock certificate? Concede that Shields was the loan association's agent and not the bank, and how can that affect the bank's liability to Durham? Was not the payment of the monthly dues by Durham to the loan association's agent, payment to the association? His stock was then worth the amount the bank agreed to pay, $131.65. The association would have its remedy against its agent for neglect of duty. Now, the bank presents this certificate to the loan association for cancellation and payment as the owner of it; the association says, "Very well, you are our agent and you have failed to remit $45 of the monthly payments made on this stock for which we have charged $21.51 penalties, and you may keep the $45 you have and here is $65.14 the balance." This is a controversy between the association and its agent, but how can that affect the bank's liability to Durham? (2) The statute of limitations had not run; the action was brought in time, and if it had run, the statute was not pleaded. There is, then, nothing in the contention of respondent that we ought to have collected this matter sooner, neither in their contention that we did not demand it. (3) Did Durham release the bank from the payment of the balance of the money due him? If so, when and where? It is true, when the matter was discussed with the board of directors of the bank, and they wanted him to look to Shields for this money, he said he

would go after Shields for it, but he considered the bank owed the debt. Does that release the bank? Was there any consideration for a release?

*James F. Green* for respondent.

(1)    The appellant's abstract does not show at what term, or on what date the action was tried in the circuit court; neither does it state when the decision was rendered, or when the motion for a new trial was filed, nor does it show the filing of any bill of exceptions. This precludes a review of the case by this court. Jackson v. Ferguson, 76 Mo. App. 270; Bruns v. Capstick, 62 Mo. App. 57; Maloney v. Railroad, 122 Mo. 114; Demske v. Hunter, 23 Mo. App. 466. (2)    Appellant simply seeks in this proceeding to have this court review the finding of the trial court upon the weight of the evidence, but as there was ample evidence upon which to base the judgment, the appellate court will not interfere. Bay v. Kemp, 113 Mo. 552; Miller v. Breneke, 83 Mo. 163; Blanton v. Dodd, 109 64. The first instruction on part of defendants, declares that plaintiff is liable for Shield's collections without regard to whether the bank was the agent of the loan company or not. This, of course, can not be the law. (3)    The second instruction asked by defendants contains the same proposition, and makes the bank liable if it did not return the certificate of stock to Durham, and wholly ignores the question of Durham's acquiescence in, and subsequent ratification of, the transaction. (4)    The trial court heard all the evidence and its finding for plaintiff is fully warranted, but the rejection of the counterclaim was proper also, because plaintiff was the assignee before maturity of the promissory note in suit, and the counterclaim arose out of a transaction not connected with the note. Gant v. Duffy, 71 Mo. App. 91; Hyde v. Hazel, 43 Mo. App. 668;

Barnes v. McMullin, 78 Mo. 260; Wilkinson v. Farnham, 82 Mo. 672. Nor was there such mutuality of indebtedness as authorized the counterclaim. Gemmel v. Huber, 71 Mo. App. 291; Cutter v. Cook, 77 Mo. 388; Sec. 605, R. S. 1899; Sec. 3936, R. S. 1899.

BLAND, P. J.—The suit is on the following promissory note:

"Piedmont, Mo., April 19, 1898.

"In accordance with the dates below set out, we or either of us promise to pay to the order of Joseph Daniels, for value received, the sum of $84.90, with interest on each installment from the time of its maturity at the rate of eight per cent, per annum, as follows:

On the fifteenth day of May, 1898 ............... $15.70
On the fifteenth day of June, 1898 ............... 15.80
On the fifteenth day of July, 1898 ............... 15.90
On the fifteenth day of August, 1898 ............ 16.00
On the fifteenth day of September, 1898 .......... 16.10
On the fifteenth day of October, 1898 ............ 5.40
                                                 _____
      Total ................................ ..... $84.90
(Signed)                        "WM. LOYD,
                          "S. R. DURHAM, Security,
                          "Jos. F. LINDSAY, Security."

Indorsed as follows:

"For value received I assign the within note to Farmers and Merchants Bank of Piedmont, Mo., notice and protest waived.

                            "JOSEPH DANIELS.

"$5.00 paid 5-14, '98
"$5.30 paid 6-16, '98
"$5.50 paid 7-16, '98

"$5.50 paid 8-15, '98

"$5.50 paid 9-14, '98."

The defendant Durham pleaded the following offset: "Now at this day comes the defendant, S. R. Durham, and answering for himself herein, admits the execution of the note sued on.

"Further answering, and by way of counterclaim, defendant states that on the tenth day of July, 1894, he was the owner and in possession of a $1,000 stock certificate of the Phoenix Loan Association of St. Joseph, Missouri, which certificate was of the value of $131.65, and which sum could be received by the surrender and withdrawal of said certificate. That the defendant on the tenth day of July, 1894, sold and assigned said certificate of stock to the plaintiff herein and for which the plaintiff agreed to pay him the sum of one hundred and thirty-one dollars and sixty-five cents in thirty days from the said date.

"Defendant states that the plaintiff paid to him the sum of $65.14 on August 27, 1894, to apply on said sum, and that on the tenth day of July, 1896, the sum of $20 to apply on the same, and that the balance due therefor with the interest due thereon at the rate of six per cent has often been demanded but still remains due and unpaid.

"Wherefore the defendant prays judgment for the balance due him as herein alleged and that the same be set off against plaintiff's demand herein, and that defendant have judgment for the balance due him herein with costs of suit.

"S. R. DURHAM, Defendant."

At the trial in the circuit court the issues were, by agreement of the parties, submitted to the judge who found for plaintiff and against the offset. Defendants appealed.

The evidence is that Durham had a stock certificate of $1,000 in the Phoenix Loan Association of St. Joseph, Missouri, on which he had paid monthly assessments of five dol-

lars for twenty-five consecutive months, and that on July 10,
1899, the withdrawal value of his certificate was $131.65. On
the last-named date he assigned and transferred the certificate
to the respondent bank at its withdrawal value and directed the
cashier of the bank to apply $125 of the proceeds of the cer-
tificate, when collected, to the payment of his note held by the
bank, and to place the balance on deposit to his credit.    The
cashier of the bank, W. C. Shields, forwarded the certificate to
the loan association at St. Joseph for collection.    The agent
of the association had failed to forward the last nine assessments
paid by Durham, in consequence of which he, Durham, under
the rules of the association was fined $21.50, and the with-
drawal value of his certificate was by the association reduced
to $84.64; from this the fine of $21.50 was deducted and the
balance ($65.14) was forwarded to the bank, and by it entered
as a credit on Durham's note of $125.    The bank refused to
give any further credit to Durham on account of the stock cer-
tificate.    Sometime afterwards, Shields paid Durham $20 on
account of the fine the association had assessed against him
for non-payment of dues.    In the receipt book furnished Dur-
ham by the association, he was directed to pay his assessments
to "W. C. Shields, Cashier."    Shields was the cashier of the
bank and Durham made payment of all his assessments to him
over the bank counter, and it was Shields as cashier of the
bank who negotiated the purchase of the stock certificate from
Durham, after making a calculation of its withdrawal value,
which calculation was correct to a cent, had all of the monthly
assessments paid by Durham been forwarded to the association.
There was a dispute on the trial as to whether the bank or
Shields was the authorized agent of the association for the col-
lection of assessments against the holders of its certificates of
stock at Piedmont.    The circuit judge evidently found that
Shields was the duly authorized agent of the association, and

we think the greater weight of the evidence is that way. There was an effort made on the part of the bank to prove that the differences between it and Durham on account of the certificate of stock had been settled, but it utterly failed to prove any settlement of the matter. Defendants moved the court to declare the law as follows:

"Instruction No. 1. The court sitting as a jury in the above-named cause, declares the law to be: that W. C. Shields being the cashier of the plaintiff bank, and having acted either as such cashier or individually as the agent and collector of the Phoenix Loan Association, and as such agent received and receipted for payments of the monthly dues made by defendant Durham, on the stock certificates, which the defendant Durham sold or transferred to the plaintiff bank; said sale being made with said Shields as cashier of said bank, then the knowledge of the said Shields that all payments made on the stock certificate by defendant Durham had not been remitted by the said Shields to the Pheonix Loan Association, was notice to the plaintiff bank, and the plaintiff bank can not avoid the payment of the contract price agreed upon for the purchase of said stock certificate, even though the plaintiff did not realize on the surrender and cancellation of said stock certificate the amount it agreed to pay therefor; the deficiency having been occasioned by the failure of the said Shields to remit promptly the payments, as made to him by defendant Durham.

"Instruction No. 2. The court sitting as a jury, declares the law to be that it makes no difference, for the purpose of determining the issues in this case, whether the Farmers and Merchants Bank or W. C. Shields were the agents of the Phoenix Loan Association and as such agent collected the monthly dues upon the stock certificate which was sold to the plaintiff, Farmers and Merchants Bank, by the defendant Durham; the said payments having been made, the stock was worth

at the time of its sale the sum of $131.65, the plaintiff not having returned or offered to return to the defendant Durham the said certificate, then the defendant Durham is entitled to a judgment on his counterclaim for the amount remaining unpaid, with six per cent interest thereon from August 10, 1894."

Which the court refused; no other declarations of law were asked or given.

I. At the time Durham sold and assigned his certificate of stock to the bank, he was entirely ignorant of the fact that any of his assessments had not been forwarded to the association. Neither had the bank any knowledge or information on the subject, unless knowledge of the fact can be imputed to it through its cashier, Shields. In making the purchase of the certificate of stock, Shields acted for the bank within the scope of his authority and the knowledge that Shields had of the condition of the stock must be imputed to the bank. Stone Cutter Bank v. Myers, 64 Mo. App. 527; Withers v. Bank, 67 Mo. App. 115; Latimer v. Equitable Loan & Inv. Ass'n, 78 Mo. App. 463. The bank, having purchased the certificate with the secret knowledge that the assessments had not been forwarded to the association, took the certificate at its own risk to make good to the association, the delayed assessments and to realize the full withdrawal value of the certificate. Instruction No. 1 should have been given.

II. Instruction No. 2, though verbally inaccurate, in the light of the fact that either the bank or Shields was the agent of the company, should have been given. It is obvious that Durham was entitled to recover of the association the full withdrawal value of his stock. He paid all of his assessments to the agent of the association and the very agent he was directed by his receipt book to make payments to, to-wit, Shields. It was the plain duty of the bank, having notice of the payments either to force full payment from the association, or to restore

the certificate unimpaired to Durham, neither of which it did or offered to do.

The judgment is reversed and the cause remanded. All concur.