## BARNSTABLE COUNTY.

### JAMES H. JENKINS *vs.* DANIEL G. BACON.[*]

The plaintiff, on the point of starting upon a long voyage, requested the defendant to buy a government bond and keep it for him. The defendant was to receive nothing for his services. The defendant bought the bond, and after keeping it a year, sent it by mail to the plaintiff's wife, and it was lost on the way. Neither the plaintiff nor his wife requested the defendant to send the bond to her. *Held,* that the defendant was liable for the bond, without regard to the question of diligence on his part. MORTON, J., dissenting.

In an action against a bailee of goods for not delivering them, to which the defence is that he sent them to the plaintiff's wife, the fact that the plaintiff calls his wife to testify that she never asked that they might be sent to her, does not authorize the inference that she was the plaintiff's agent.

A declaration containing counts in contract for failure to keep a government bond as agreed, and for money had and received, and in tort for conversion of the bond, for negligently keeping it so that the defendant lost it, and for disposing of it not in accordance with the agreement with the plaintiff, ended with an averment that the counts were for the same consideration. *Held,* on demurrer, that under the Gen. Sts. *c.* 129, § 2, *cl.* 5, there was no misjoinder of counts.

CONTRACT with counts in tort. The first three counts were in contract. The first alleged that the plaintiff intrusted to the de-

---

[*] This case was argued at January term 1872, and was afterwards re-argued in writing and considered by all the judges.

fendant a United States bond for $500, to be kept for the benefit of the plaintiff until called for ; that the defendant agreed so to keep it and to deliver it to the plaintiff on demand, in consideration of services which had been rendered by the plaintiff to the defendant; and that the plaintiff demanded it and the defendant neglected and refused to deliver it. The second count was for money had and received, with a specification that it was for cash intrusted to the defendant to buy a United States bond for the plaintiff. The third count was for money had and received, with a specification that it was for cash received by the defendant from the sale of a United States bond for $500 belonging to the plaintiff. The other counts, from the fourth to the seventh, were in tort. The fourth alleged that the plaintiff intrusted to the defendant a United States bond for $500, to keep for the plaintiff and to deliver it to him on his demand therefor, but that the defendant, upon demand made by the plaintiff, refused to deliver it, and converted it to his own use. The fifth alleged that the plaintiff intrusted to the defendant a United States bond for $500, to keep for the plaintiff and to deliver it to him on his demand therefor, but that he did not deliver it to the plaintiff, although the plaintiff demanded it, but so negligently and carelessly kept it, that he lost it. The sixth count alleged that the defendant converted to his own use a United States bond for $500, the property of the plaintiff. The seventh count alleged that the plaintiff intrusted to the defendant a United States bond for $500, to be kept and disposed of as the plaintiff should direct; and that the defendant did not dispose of it according to any direction of the plaintiff, but wholly withheld it, although the plaintiff requested the defendant to deliver it to him.

The declaration closed thus : " And the plaintiff says that the counts in tort and in contract herein are for one and the same consideration."

The defendant demurred on the ground that counts in contract and tort were improperly joined. The Superior Court overruled the demurrer, and the defendant appealed.

At the trial in the Superior Court, before *Pitman*, J., it appeared " that at the time of the transaction between the plaintiff

and the defendant relating to the bond, the plaintiff was about to proceed upon a voyage to the East Indies, which voyage lasted between three and four years ; that the defendant kept the bond in his safe with his own papers and effects for nearly a year after the departure of the plaintiff on the voyage ; that when the first six months' interest on the bond became due, the defendant's bookkeeper cut the coupon therefor from the bond and sent it by mail to the plaintiff's wife at West Barnstable ; that she, by letter to the bookkeeper, acknowledged the receipt thereof ; that in the spring of 1865 the defendant, finding the bond in his safe, directed his bookkeeper to send it to the plaintiff's wife at West Barnstable, but gave no directions as to how it was to be sent ; that the bookkeeper mailed it to the plaintiff's wife; and that it never reached her."

The plaintiff testified " that he requested the defendant to purchase the bond for him and to take care of it, or keep it for him, (but was unable to say which form of expression was used ;) that the defendant agreed to do as he requested ; that he expected the interest on the bond, as it became due, to be sent to his wife at West Barnstable, or held and placed to his credit by the defendant ; and that he never gave the defendant or any agent of his direction to send the bond to his wife."

The plaintiff called his wife as a witness, and asked her whether she ever gave the defendant or his bookkeeper any directions or orders to send the bond to her, to which question she replied she had not.

It was admitted by the plaintiff that the defendant was to receive no compensation for his services, and that whatever the defendant's undertaking in relation to the bond was, it was gratuitous.

Among other things the defendant asked the judge to instruct the jury as follows : " If the defendant undertook and agreed in relation to the bond as the plaintiff alleged, and afterwards, without authority express or implied from the plaintiff, gave directions to his bookkeeper to send the bond to the plaintiff's wife, and the bond was sent to her by mail and lost therefrom, the defendant is not liable to the plaintiff for the value thereof, unless the jury are

of the opinion that such directions by the defendant were fraud ulent, grossly negligent or grossly careless. The fact that the plaintiff offered his wife as a witness, and asked her whether she at any time gave directions or orders that the bond be sent to her, is one from which the jury may infer that she was the agent of the plaintiff during his absence at sea."

The judge declined so to instruct the jury, but instructed them "that the plaintiff might recover by proving either gross negligence of the defendant in the care and custody of the plaintiff's property, or, without respect to 'the particular degree of care shown, by proof that the defendant took the bond upon the agreement to keep it for the plaintiff, and thereafter, without authority express or implied, sent it to the plaintiff's wife or directed his clerk to do so, and the defendant thereby lost it by a disposition of the bond contrary to the original undertaking." Upon the other branch of the case, the judge instructed the jury as to what would constitute gross negligence in a manner not excepted to.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. M. Day*, for the defendant.

*G. Marston & W. H. Cobb*, for the plaintiff.

AMES, J. In that class of bailments described in the text books under the title of " deposits," the obligation of the bailee is that he will keep the thing deposited with reasonable care, and that he will upon request restore it to the depositor, or otherwise deliver it according to the original trust. According to the well settled rule, the bailee who acts without compensation can only be held responsible for bad faith, or gross negligence, if the deposit should be lost or injured while in his custody. *Whitney* v. *Lee*, 8 Met. 91. *Foster* v. *Essex Bank*, 17 Mass. 479. Except as to the degree of diligence and care required of him, his general obligation is the same as if he had assumed the trust upon the promise or with the expectation of reward. If he should deliver the property to a person not authorized to receive it, he would make himself responsible for its value, without regard to the question of due care or the degree of negligence. *Hall* v. *Boston*

*& Worcester Railroad Co.* 14 Allen, 439. *Lichtenhein* v. *Boston & Providence Railroad Co.* 11 Cush. 70. *Cass* v. *Boston & Lowell Railroad Co.* 14 Allen, 448, 453. 2 Kent Com. (6th ed.) 568. If the case of *Heugh* v. *London & North Western Railway Co.* L. R. 5 Ex. 51, can be said to present a case of delivery to the wrong person, (which is open to considerable doubt,) the doctrine there asserted is directly opposed to the above cited decisions of this court. Good faith requires, even in the case of a gratuitous bailment, that the bailee should take reasonable care of the deposit; and what is reasonable care must materially depend upon the nature, value and quality of the thing, the circumstances under which it is deposited, and sometimes upon the character and confidence and particular dealings of the parties. Story on Bailments, § 62.

In this instance, the transaction was more than a simple deposit for safe keeping. The plaintiff claimed, and there was evidence, which was not contradicted or rebutted, to the effect that the defendant was to collect the coupons as they became due, for the benefit of the plaintiff's wife. The bond was delivered to the defendant in trust; he accepted the trust and entered upon its performance. "The owner's trusting him with the goods is a sufficient consideration to oblige him to a careful management." Lord Holt, C. J., in *Coggs* v. *Bernard*, 2 Ld. Raym. 909. Notwithstanding the gratuitous character of the bailment, "it is held that the bailor has a remedy, in an action *ex contractu*, if the bailee do not perform his undertaking, and that there is a sufficient consideration to support a contract." Metcalf Con. 164 and cases there cited. In *Robinson* v. *Threadgill*, 13 Ired. 39, it was held that if one undertakes to collect notes for another, without mentioning any consideration, and takes the notes for that purpose, there is a sufficient legal consideration for the engagement. A mere agreement to undertake a trust *in futuro* without compensation is not obligatory; but when once undertaken and the trust actually entered upon, the bailee is bound to perform it according to the terms of his agreement. *Rutgers* v. *Lucet* 2 Johns. Cas. 92. *Smedes* v. *Utica Bank*, 20 Johns. 372, 879. Upon this point the authorities are numerous. They are

fully cited in 1 Parsons Con. (5th ed.) 447; and 2 Parsons Con. 99; and in Chitty Con. (10th Am. ed.) 38–40, notes n and u. And it is well settled that the remedy is not confined to an action of tort, but that contract will lie.

The substance of the defendant's contract and duty was to keep the deposit with reasonable care, and to restore it when properly called upon. We do not interpret this contract as restricting him to one place or uniform mode of keeping. All that could reasonably be expected of him was that he should keep it with his own papers, and in the same manner and with the same degree of care, as a man of ordinary prudence would exercise in the custody of papers of his own of like character. Circumstances might occur which would render it reasonable and proper that he should change the place of deposit. If his own place of business should be destroyed by fire, or if, from change of residence or temporary absence from the country, or for other sufficient reason, it should become inconvenient or unsafe that he should retain the manual possession of the bond, he would undoubtedly be at liberty to deposit it in any other place or mode, in which he with reasonable prudence might deposit his own property of the like description. But, as between the original depositor and himself, he would continue to be the lawful and responsible custodian, and bound to practise that degree of care which the law requires of gratuitous bailees. The complaint against him is, not that he kept it negligently, or lost it by gross carelessness, but that he intentionally disposed of it in a manner not authorized by the terms of the trust. For the purposes of this case, it is wholly immaterial whether the post-office furnishes a reasonably safe mode of transmission, in the case of valuable papers of such a description, or not. The question of due diligence or gross neglect, in our opinion, is not raised by the bill of exceptions.

A case recently decided in New York, *Kowing* v. *Manly*, 49 N. Y. 192, is in its leading features analogous to that now before us. In that case certain bonds had been left with the defendants with instructions in writing not to deliver them to any person except upon the written order of the plaintiff, who was the depos-

itor. The bonds were subsequently delivered by the defendants to the plaintiff's wife upon her presentation of an order purporting to be signed by him, which was in fact a forgery. The defendants were held accountable for the value of the bonds, not on the ground of any want of due and reasonable care, but because they had disposed of them in a manner not authorized by the contract. The fact that their instructions were expressed in writing could add nothing to the duties required of them by their contract. They were held liable for the reason that they had no authority to do what the defendant in this case attempted to do ; and because such a delivery to the wife was a violation of their trust.

In *Stewart* v. *Frazier*, 5 Ala. 114, the defendant had received money to be kept for the plaintiff, without compensation. No instructions had been given to the defendant to remit the money, but from kindness and the best intentions he undertook to remit it by the hands of a person "reputed to be an honest man." The money was lost, and the defendant was held responsible, on the ground that it was a case in which the plaintiff was exposed to a risk to which he had not consented. The court say " the law would be the same if the public mail had been resorted to, instead of a private conveyance." They add that the question of gross negligence in the transmission of the money does not arise, as the defendant "had no authority to transmit, in any mode, either express or implied."

As we have already remarked, if the defendant had delivered the bond by mistake to a person not entitled to receive it, he would make himself responsible, without regard to the question of due care, or degree of negligence. His duty was to keep the deposit; he could not dispose of it without the express or implied authority of the depositor. It will not be contended that the case shows any express authority for sending it by mail to the plaintiff's wife, and certainly none can be implied from the circumstances. In so doing, he subjected the plaintiff to a risk which he had not contemplated, and did an act not authorized by the terms of his trust. It was left to the jury to say whether, in the words of the presiding judge. it was " a disposition of the bond contrary to the original understanding," whereby the defendant lost it.

The result is that we find no error in the course of the trial in this part of the case.

The fact that the plaintiff offered his wife as a witness to prove that she did not authorize or direct that the bond should be sent to her, would not have justified an inference by the jury that she was his agent during his absence at sea. The defendant therefore was not entitled to the second ruling which he requested of the court.

The defendant's demurrer to the declaration for the alleged misjoinder of tort and contract was properly overruled. It is sufficiently averred in the declaration itself that the counts are for the same cause of action, and this averment removes the objection upon which the defendant relies. Gen. Sts. c. 129, § 2, cl. 5.

The majority of the court, therefore, concur in the order,

*Exceptions overruled.*

MORTON, J. I am unable to concur in the opinion of the majority of the court.

The general rule is well settled that a gratuitous bailee or unpaid agent is liable only for gross negligence. If the property intrusted to him is stolen or lost or injured without negligence on his part, he is not responsible. *Foster* v. *Essex Bank*, 17 Mass. 479. *Whitney* v. *Lee*, 8 Met. 91. *Coggs* v. *Bernard*, 1 Sm. Lead. Cas. 283 and notes. It seems to me that the result of the authorities is, that the gist of the action against such bailee, whether it be, in form, contract or tort, is the negligence of the defendant. The ground of the right to recover is that some wrongful act of the defendant has caused the destruction or loss of the plaintiff's property. If it is lost by any casualty which does not involve negligence of the bailee, the loss is the bailor's. I am not able to see why this rule does not apply to a case like this, where the bailee undertakes to terminate the bailment or agency. He is not bound by a contract founded upon a sufficient consideration to continue it for any definite time. It is clear that he might terminate it at any time upon giving notice to the bailor.

Cases may occur in which it would be justifiable for the bailee to terminate his agency, even without notice to the bailor, where,

as in this case, such notice is impossible. There may be a change of circumstances which makes it necessary, or reasonable as a measure of prudence, for the preservation of the property, to substitute a new custodian. Suppose the bailment was of a horse, and the bailee's stable was burned, could it be held that he could not put the horse in the custody of some proper person, or that, if he did so, he would be regarded as an insurer of its safety? Suppose the bailee becomes bankrupt and an unsuitable person to have the charge of such property as has been intrusted to him, may he not, for the greater security of the property, commit it to the charge of some responsible person? Or suppose he is obliged to leave the country, so that he cannot retain the custody of the property, may he not deposit it with a suitable custodian at the risk of the bailor? Or suppose the property is fraudulently obtained from him by means of a forged power of attorney, or order purporting to be signed by the bailor, calculated to deceive the most prudent man, is the bailee liable for the loss? Other cases might be supposed. In all such cases, I think, the liability of the bailee depends upon the question whether his act was negligent or wrongful. If he did what men of ordinary prudence would do under the same circumstances, he has performed all the duty which is imposed upon him by the nature of his undertaking; he is guilty of no negligence by which the bailor's property is injured, and ought not to be held liable for it.

I am of opinion, therefore, that in the case at bar it should have been left to the jury to decide whether it was negligence in the defendant, under the circumstances of the case, to attempt to terminate his agency by sending the bond to the plaintiff's wife, and that the instruction to the effect that if he lost it by a disposition of it contrary to the original undertaking, he was liable without regard to the degree of care shown, was erroneous. The effect of the ruling is to hold the defendant liable to the same extent as if he were bound by a contract, upon a sufficient consideration, to continue the custody of the bond until the plaintiff's return. It excludes from consideration all inquiry as to the circumstances which induced him to change the place of deposit. In my opinion, it was a question of fact for the jury to determine,

whether, under the circumstances, the defendant was guilty of negligence in undertaking to send the bond to the plaintiff's wife, or in the mode he adopted in sending it.

The case of *Heugh* v. *London & North Western Railway Co.* L. R. 5 Ex. 51, sustains the views I take of the rights and duties of gratuitous bailees. It differs from several cases decided by this court in holding that railroad companies, after the transit of goods sent by them is terminated, are mere gratuitous bailees. *Lichtenhein* v. *Boston & Providence Railroad Co.* 11 Cush. 70. *Hall* v. *Boston & Worcester Railroad Co.* 14 Allen, 439. *Cass* v. *Boston & Lowell Railroad Co.* Ib. 448. These cases were decided upon the ground that the defendants therein were warehousemen, and bound to the duties and obligations of that relation. *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray, 263. They do not present the case of a mere gratuitous bailee, and, it seems to me, do not decide the question involved in the case at bar.