## Kierce's Administrator v. Farmers Bank, et al.

(Decided February 13, 1917.)

### Appeal from Hickman Circuit Court.

1. Bailment—Duties and Liabilities of bailee Without Compensation. —A bailee without compensation is obligated only to the exercise of slight care and is responsible only for gross negligence or bad faith.

2. Bailment—Joint Bailment—Effect of Instructions by One Joint Bailor to Bailee.—If notes payable to two persons are placed in a bank for the accommodation of the bailors and without compensation to the bailee, under instructions from one of the joint payees not to let the other joint payee get possession of the notes, and the bank, in violation of these instructions, permits the forbidden bailor to take possession of the notes, it will be liable to the other bailor for the loss he has sustained.

M. T. SHELBOURNE and J. M. BRUMMAL, JR., for appellant.

E. T. BULLOCH for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This suit was brought by the administrator of Ellen Kierce to recover from the Farmers Bank of Columbus, $2,025.79, alleged to be due on account of the principal sum of three land notes of $466.67 each, dated March 17, 1909, together with interest thereon, executed by George Higgerson to Ellen and Pat Kierce as the purchase price of a tract of land owned by Ellen Kierce. The suit was based on the ground that these three notes which were really owned by Mrs. Kierce were deposited with the bank and the cashier notified that the notes were deposited for the express purpose of applying the proceeds of their collection to the payment of a note due by the Kierces to the Union Central Life Insurance Co. That he was instructed not to allow Pat Kierce to withdraw any of the notes, or sell or dispose of them in any manner. That when they were collected the proceeds were to be applied to the payment of the insurance debt.

That in violation of this agreement and the instructions given to him, the cashier permitted Pat Kierce to withdraw the notes and secure the proceeds thereof, the result being that no part of the proceeds of the notes was applied to the payment of the insurance debt.

In an amended petition a recovery was sought upon the ground that the proceeds of these notes were deposited in the bank to the credit of the joint account of Ellen and Pat Kierce with instructions not to allow Pat Kierce to check it out, but that the bank permitted the money so deposited to be withdrawn on checks bearing the signatures of Ellen and Pat Kierce, which signatures were made as the bank knew by Pat Kierce alone and without any authority from Ellen Kierce to sign her name to the checks.

On the trial of the case there was a judgment for the bank, and the administrator appeals.

The basis of the suit is to be found in the following evidence of Mrs. Trevathan, who was a daughter of Pat and Ellen Kierce, in which she relates a conversation that she says took place in October, 1909, between herself and J. P. DeBoe, the cashier of the Farmers Bank:

"I went to the Farmers Bank of Columbus, introduced myself to the cashier, Mr. J. P. DeBoe; told him that I was Mrs. Trevathan; that I was Mrs. Kierce's daughter, and that my mother had sent me there to see if my father had tried at any time to collect any money or interest in any way on the land notes that were placed there on the sale of some land in March before that. He studied a minute, and says: 'No, he never has.' I says, 'Father has been drinking very heavily lately and mother was afraid he had tried to draw the interest on it or something of the kind, and she sent me here to tell you that if he did, not to let him have any of the money, not to let him have any of the interest, or anything on the note.' He says, 'Tell her to rest easy, I won't let him have them.' I says, 'Nor nobody else; he may try to borrow money on the outside and give them as security.' I said, 'She placed this note here to meet a mortgage on the home place, and if he gets the money they will lose their money and not be able to pay the mortgage off that is on their home.' He says, 'Her and Pat both told me that when they put them in. You tell her to rest easy; I will attend to it.' I says, 'Mr. DeBoe, is my notice lawful and legal; could he handle those notes by my notification, or had my mother better come in person and serve notice on the officers in order to give proper notice in order that in the event pa should come, or anybody come and try to get them?' He says, 'Your notice is all right; tell her to rest easy; I will attend to it for her.' That was the conversation between me and Mr. DeBoe; that was in October, a few weeks before she took sick. Q. You never told the cashier of the bank not to cash any checks issued by your father and mother? A. I told him to take care of the land notes; not to let him have any money on them; that was my instructions. Q. I will ask you if you ever told Mr. DeBoe, cashier of the bank, not to cash any checks drawn on that bank signed by Ellen and Pat Kierce? A. No, I didn't tell him that."

The evidence also shows that Pat Kierce was in the habit of drinking excessively; that Ellen Kierce was stricken with a serious illness early in November, 1909, and died in February, 1910, and that from the beginning of her illness until her death she was unable to transact any business and did not sign any checks.

George Higgerson, the purchaser of the land, in payment for which he executed the three notes, paid by his check to Pat and Ellen Kierce on November 24, 1909, $466.67 in satisfaction of one of the notes, and this check, as appears from the records of the Farmers Bank, was on that day deposited in the bank to the credit of an account in the name of Ellen and Pat Kierce. The other two notes he paid by a check payable to Ellen and Pat Kierce for $900, on Feb. 7, 1910. Neither this check nor its proceeds were deposited in the Farmers Bank to the credit of the account of Ellen and Pat Kierce.

The cashier, DeBoe, testified that the Farmers Bank never at any time had for collection the notes executed by Higgerson to the Kierces. He said he did have a conversation with Mrs. Trevathan some time in October, 1909, in which she told him not to pay out any more money on the checks of Pat Kierce, but that he did not have any conversation with her in which she asked him to hold the notes or the money on them. That he did not know that they owed the Union Central Life Ins. Co. anything. That he had never collected anything on the notes, but that Pat Kierce, when he collected the money on the first note, put the check in the bank; that Ellen and Pat Kierce had a joint account in the bank, and no money was drawn out on this account except on checks signed by Ellen and Pat Kierce.

He said that the bank had a box in which customers were in the habit of putting papers, and that these Higgerson notes were placed in that box for safe keeping. That Pat Kierce got the notes and gave them to Higgerson, and that he had no right to prevent him from doing so. That he had no instructions from any person not to let him have the notes. Their customers who put notes or papers in the box had the right to come there and get them out when they wanted to.

There was filed with the evidence of the cashier a copy of the joint bank account of Ellen and Pat Kierce covering the entire period involved in this suit, and it

appears from this account that on November 24, 1909, $466.67 was deposited to the account of Ellen and Pat Kierce. This deposit was the proceeds of one of these notes paid on that day by Higgerson. The other two notes, as is shown by the evidence of Higgerson, were paid by his check to Ellen and Pat Kierce for nine hundred dollars on February 17, 1910, but the bank records do not show that this amount, or any part of it, was deposited to the credit of Ellen and Pat Kierce, although the check of Higgerson was made payable to them.

DeBoe further testified that this nine hundred dollar check, after it had been endorsed with the signatures of Ellen and Pat Kierce, which signatures we may assume were made by Pat Kierce alone, was delivered to him. That he had no distinct recollection of what disposition was made of this nine hundred dollar check and did not remember whether or not Pat Kierce had an individual account in the bank, but if he did, the proceeds, after the endorsement of the check, were placed to his credit. At any rate, neither this nine hundred dollar check, nor any part of it, was ever credited to the joint account of Ellen and Pat Kierce. What became of the money collected on the check, the record does not show.

There is no evidence in the record that these notes, or any of them, were placed in the bank for collection or as a special deposit, and the uncontradicted evidence of the cashier is that they were not placed in the bank either for collection or as a special deposit. It does, however, appear, that some time previous to October, 1909, these three notes had been placed by the Kierces in a box that the bank had for the accommodation of its customers and in which papers might be placed by them. This box was under the control of the bank and kept by it for the use and accommodation of its customers. So that as to all papers placed in this box by the customers of the bank it occupied the relation of a bailee without compensation and held the papers solely for the accommodation of the bailor.

The duties of a bailee without compensation and for the mere accommodation of the bailor have been laid down in many cases by this and other courts. The liability of the bailee in bailments like this is very well set forth in 5 Cyc. 186, where it is said: ''Where the bailment is one which is for the sole benefit of the

bailor, it is uniformly held that the bailee is obligated only to the exercise of slight care, and is answerable only for gross neglect or bad faith.'' Supporting this rule are: Green v. Hollinsworth, 5 Dana 173; United Society of Shakers v. Underwood, 9 Bush 609; Ray v. Bank of Kentucky, 10 Bush 344; Dunn v. Kyle, 14 Bush 134; Cowing v. Manley, 49 N. Y. 192, 10 Am. Rep. 346; Jenkins v. Bacon, 111 Mass. 373, 15 Am. Rep. 33. The principle of these cases is also laid down in 3 Ruling Case Law, pages 99-104.

Applying to the facts of this case the duty imposed upon the bank as a bailee without compensation, we think there was sufficient evidence to take the case to the jury upon the theory that the bank in letting Pat Kierce have possession of these notes was guilty of bad faith and gross negligence. If the testimony of Mrs. Travathan is true, the cashier was instructed not to permit Pat Kierce to have possession of these notes for any purpose, and he promised to observe these instructions. But in violation of the instructions he permitted Pat Kierce to take possession of the notes and collect them.

It is true that $466.67, the proceeds of one of the notes, was placed by Pat Kierce on deposit in the bank to the credit of the account of Ellen and Pat Kierce, but it appears that he drew all this money out on checks to which the names of Ellen and Pat Pierce were signed by himself. The nine hundred dollars received on the other notes, so far as this record shows, was all paid to him, or at any rate, came into his possession. What part of the proceeds of these notes was applied to the use or benefit of Mrs. Kierce does not appear, nor does the fact that Pat Kierce was her husband alter the duty the bank was under to observe the instructions given by Mrs. Travathan.

We think there can be no doubt that where a bailment is made of an article owned by two persons, or a note payable to two persons, either one of them may instruct the bailee not to deliver the thing bailed to the other bailor, and if he agrees to do this and in violation of these instructions and his agreement the bailee does deliver the thing to one of the joint bailors, the liability of the bailee will be the same as if he had delivered the thing bailed to a stranger.

We do not, of course, express any opinion upon the merits of the case or as to the weight that should be attached to the evidence of Mrs. Trevathan, or as to whether she gave to the cashier the instructions related by her. We merely say that her evidence and the other admitted facts made out a state of case entitling the plaintiff to go to the jury under proper instructions, and such instructions were not, as we think, given.

On another trial, if there be one, the jury should be told, in substance, that if they believe from the evidence that these notes had been placed for safe-keeping in the bank by the Kierces, and while they were in the bank, and before any of them had been paid, Mrs. Kierce, through her agent, notified the cashier not to permit Pat Kierce to get possession of the notes, or any of them, or receive any money on any of them, and he agreed to this and that in violation of these instructions and his agreement the cashier of the bank permitted Pat Kierce to take possession of the notes or the proceeds, they should find for the administrator the amount of the notes with interest, less whatever sum received by Pat Kierce from the proceeds of these notes was applied to the use or benefit of Ellen Kierce. The converse of this instruction should be given if requested.

The parties may also file such amended pleadings as they desire.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.