## Perkins-Bowling Coal Corporation v. Maryland Casualty Co.

(Decided Dec. 13, 1932.)

TYE, SILER, GILLIS & SILER for appellant.

STEPHENS & STEELY and EUGENE R. ATTKISSON for appellee.

·Opinion of the Court by Judge Richardson—Affirming.

Wallace Combs was a bookkeeper and cashier of the Perkins-Bowling Coal Corporation. The Maryland Casualty Company executed to the Perkins-Bowling Coal Corporation a bond in the sum of $5,000, conditioned that it would pay any loss the Perkins-Bowling Coal Corporation might sustain because of any act or acts of fraud, dishonesty, forgery, embezzlement, or willful misapplication of its funds by Combs while in the performance of his duties as bookkeeper and cashier. While this bond was in force, and on July 3, 1930, the Perkins-Bowling Coal Corporation claims Combs was guilty of acts of fraud, dishonesty, embezzlement, by the wrongful and willful misapplication of $640 of its funds. It instituted this action in the Whitley circuit court to recover the $640 and the further sum of $104.40 expended by it when complying with the demand of the Maryland Casualty Company to assist in a criminal prosecution against Combs. The facts are these: Combs had been acting as bookkeeper and cashier of the Perkins-Bowling Coal Corporation at Anco, Knott county, Ky., for five years and seven months. · E. C. Perkins was the general manager of the Perkins-Bowling Coal Corporation. Combs was vested with the authority to sign and issue checks for the corporation. He received its cash and kept it in a safe provided for that purpose; paid it out in the due course of business of the corporation, or deposited it in the bank to its credit. The funds of the corporation were kept by him in a till in the safe. The key to the till was in his possession and control. On April 7, 1930, he drew a check of the corporation, payable to himself, deposited it to his individual credit in the bank where his individual account was kept, and appropriated the proceeds to his own use. The corporation retained, monthly, a small portion of the salaries and wages of its employes to defray their hospital expenses in the event their health required hospital services, which was kept by Combs in an envelope in the safe in the office. He had control of this hospital fund. Perkins the general manager visited the office of the company, at Anco, on an average of three or four days a week.

On· the afternoon of July 2, 1930, while the books of the corporation were being closed by Combs for the month of June, Perkins informed him that it would be

necessary for him to take over the cash of the corporation, and requested Combs to return to the office after supper, where he would help him close the books and would then take over the cash. Perkins returned to the office of the corporation, with another employee, and remained until 8:30 or 9 o'clock. Combs did not appear at the office. Around 6 o'clock the next morning, July 3, Combs went to the office of the corporation, and when no one else was present, executed and placed in the safe the following memorandum and receipt:

> "Anco, Ky., June 30, 1930.
"Paid by check No. ——
  "Paid in cash $668.00
  "Total $——
  "Received of the Perkins-Bowling Coal Corporation Six Hundred & Sixty-Eight 00/Dollars, on account of settlement.
  "Payroll No. ——. [Signed] Wallace Combs
  "Witness ——. O.K.CP/66."

The envelope containing $36.91 on hand April 30, 1930, and another containing $45.92 for May 30, 1930, hospital funds, were found empty, and in each of them was found these memoranda: "Due from cash from WCC $45.92." "Due from cash WCC $36.91." A receipt dated June 30, 1930, for the $225 check, was left in the safe by Combs. Practically all the cash, the books of the corporation showed was on hand, was taken by him at the time he left the memoranda and receipts. The bank with which Combs kept the account of the corporation returned to its office at Anco, a balance sheet showing the amount to the credit of the corporation, on March 31, 1930, of $1,647.46. After this statement was received by Combs, he changed the figures, $1,647.96, by adding the $225 check, thus making the balance $1,872.46, corresponding with the amount shown by the books of the corporation, kept by him.

During the first portion of the year 1928, Combs was paid a salary of $180 per month. The president and general manager of the Perkins-Bowling Coal Corporation in the early part of April, 1928, decided that the corporation was losing money, and that it would be necessary to reduce the salaries of all salaried employees, including Combs. The general manager called together, at Anco, the salaried employees, including Combs, and informed them that a reduction of 20 per cent. would be made in their salaries, but that

once every three months thereafter, if it was discovered the business of the corporation justified it, their salaries would be restored or such per cent. of the reduction as the business of the corporation justified. This arrangement went into effect April 1, 1928. At the end of the first three months thereafter, their salaries were increased 10 per cent., or one-half of the percentage of the reduction. At the end of the second three months a like 10 per cent., or one-half of the reduction, was paid to them. Thereafter 10 per cent. of the original reduction of their salaries was paid from September, 1928, until the services of Combs ended July 3, 1930.

It is the contention of Combs that he was entitled to another 10 per cent. of his salary from the date of the first reduction in 1928, until his services ended, and that when he closed his account with the company he retained the $640 which he claims was the 10 per cent. due him as salary as per agreement of 1928. The general manager of the corporation, Perkins, when he would visit the office of the corporation at Anco, three or four times the week, had access to the books, the cash, and business of the corporation under the control of Combs, and received information "sometime in March, April or May * * * along in the spring," of the $225 check drawn against the account of the corporation by Combs and appropriated by him to his own use. Perkins claims that the $225 check was included in the $640. A. V. Brown, the secretary and treasurer of the Perkins-Bowling Coal Corporation, who prepared the claim of the corporation for presentation to and collection from the Maryland Casualty Company, claims that the $225 check was not included in the $640. The $225 check, and the record, and the statement of its account furnished by the bank, and the evidence concerning them, appeared in the case during the progress of the trial. Therefore the Maryland Casualty Company tendered an amended answer, relying on a provision of its bond in this language:

"That if an employer became aware of the employee gambling or speculating, or committing any disreputable, lewd, or act of fraud or dishonesty of the employee, or unlawful act, the employer would within ten days thereafter notify the company by registered letter addressed to the company at its home office, Baltimore, Md., and the company would not be liable for any loss subsequently incurred by

the employer through any act of the employee, unless the company should have consented in writing to continue its liability under this bond."

The issuing of the $225 check to himself, and the appropriation thereof to his own use, and the alteration of the statement of the bank made by him in an effort to cover up his peculation, were relied upon as a bar to a recovery. The testimony of Perkins, showing the time of his opportunity of the knowledge of the corporation of the issuance and appropriation by Combs of the $225 check, was relied upon as evidence to establish the defense by virtue of the quoted clause of the bond. The filing of the amended answer setting up this defense was within the sound discretion of the court. Civil Code of Practice, sec. 134; Palmer v. Smith, 204 Ky. 82, 263 S. W. 773; Louisville & N. R. Co. v. Tuggle's Adm'r, 151 Ky. 409, 152 S. W. 270. It is very plain that the facts stated in the amended answer were sufficient to constitute a valid defense to the appellant's cause of action for the recovery of the $640. Like any other contract, it should be given a practical and reasonable interpretation, consistent with its express language and enforced accordingly. Fireman's Ins. Co. v. Cecil & Co., 12 Ky. Law Rep. 48. It should be construed according to the intention of the parties in view of the language used by them in expressing that intention. American Accident Co. v. Reigart, 94 Ky. 547, 23 S. W. 191, 15 Ky. Law Rep. 469, 21 L. R. A. 651, 42 Am. St. Rep. 374. The parties to it had the right to put in it such conditions as they desired. Bahre v. Travelers' Ass'n of America, 211 Ky. 435, 277 S. W. 467. Its conditions and terms are binding on the parties to it, not being illegal, unreasonable, or against public policy. Niagara Fire Ins. Co. v. Mullins, 218 Ky. 473, 291 S. W. 760; Doyle v. Maryland Casualty Co., 168 Ky. 795, 182 S. W. 946. The provision requiring the giving of notice of the wrongful or fraudulent acts of Combs within ten days after knowledge thereof on the part of the Perkins-Bowling Coal Corporation imposed the duty on the corporation of giving notice as therein provided as a condition precedent to its right of recovery for his wrongful acts subsequent thereto, and on the 3d day of July, 1930. Barry v. Alsbury, Litt. Sel. Cas. 149; Frost on Guaranty Insurance, sec. 190; Fidelity & Guaranty Co. v. Western Bank, 94 S. W. 3, 29 Ky. Law Rep. 639, and cases cited; Falls City

Plumbing Co. v. Potomac Ins. Co., 193 Ky. 737, 237 S. W. 376. The act of the general manager, manifested by his calling on Combs to surrender the cash and to sever his connection therewith, clearly indicates that at that time the corporation had some valid reason for so doing. No fraudulent or wrongful act on the part of Combs prior thereto, except the check for $225 and his appropriation thereof, and the alteration of the statement of the bank showing the balance of the corporation in the bank at the close of the previous month, is shown as the cause for the corporation demanding of Combs at that time the surrendering the cash and severing his connection therewith. The testimony of Perkins as to the month in which he discovered the actions of Combs in connection with the $225 check was sufficient to authorize a submission of the case to the jury on this issue.

Complaint is made by the appellant that the secretary and treasurer of the corporation was in possession of more definite knowledge at the time the corporation first discovered the wrongful act of Combs as regards the $225 check, and that the appellee refrained, and did not elicit from him his knowledge.

If the appellant was not satisfied to submit this issue to the jury on the testimony of Perkins, without developing the knowledge of Brown, touching the subject-matter, it was its duty to develop the evidence as to this issue by its own examination of its secretary and treasurer in reference thereto.

The instruction given on this issue is vigorously attacked by the appellant. A careful consideration of the instruction submitting this issue to the jury convinces us that its criticism is not well founded. It, properly and sufficiently by appropriate and clear language, directed the jury to find for the appellee, if it believed from the evidence that Combs on April 7, 1930, drew the check of $225 and that his act in so doing was one of fraud or dishonesty and considered such by the Perkins-Bowling Coal Corporation, and the plaintiff knew, or by the exercise of ordinary care could have known, of the drawing of said check by Combs, then it was its duty within ten days thereafter, i. e. after it obtained such knowledge or could have done so by the exercise of ordinary care, to notify the Maryland Casualty Company, by registered letter, etc., and that if it

failed to give such notice to find for the Maryland Casualty Company.

The contention of the appellant is that the word "thereafter," as used, is susceptible to either one of two meanings, i. e. the notice should have been given ten days after the date of the check or ten days after knowledge of its issuance by Combs. The instruction is not susceptible of such reading. Other criticisms of this instruction are made. We do not deem it necessary to consider them seriatim. It is sufficient to say we do not consider the other criticisms, if well founded, prejudicial to the substantial rights of the appellant.

Instruction No. 5 authorized the jury to find for the Maryland Casualty Company, if it believed from the evidence that Combs was a stockholder in the Perkins-Bowling Coal Corporation and that his stock was reasonably sufficient to indemnify the plaintiff against the loss sued for to find for the Maryland Casualty Company. An examination of the motion and grounds for a new trial discloses the fact that instruction No. 4 is the only one given by the court of which the appellant therein complained. It is the prevailing practice in this court that an error in giving or refusing an instruction cannot be reviewed by this court unless it is presented in the motion and grounds for a new trial. Civil Code of Practice, subsec. 8, sec. 340; Humphreys v. Walton, 2 Bush, 580; Harmon v. Rose, 235 Ky. 701, 32 S. W. (2d) 57; Gayheart v. Smith, 240 Ky. 596, 42 S. W. (2d) 877; Engleman v. Caldwell and Jones, 243 Ky. 23, 47 S. W. (2d) 971.

Judgment affirmed.