## Hargis v. Spencer.

(Decided May 18, 1934.)

A. H. HARGIS for appellant.
E. C. HYDEN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

In an action instituted by appellant in the Breathitt circuit court, upon a writing, claimed to have been executed by appellee as a promissory note to appellant,

appellant was denied recovery thereon and judgment was rendered in favor of appellee against appellant for the sum of $500 upon her counterclaim.

Briefly summarized, the facts as disclosed by the record are as follows: The appellant, while incarcerated in the jail at Lexington, Ky., for contempt of court, it is admitted, requested his attorney to bring him from his private safe in Jackson, Ky., a bag of gold money, amounting to some $1,300; further, that the appellee, Mrs. Spencer, was at such time also requested to come to Lexington to see him, which she did; and that, when she visited appellant at the jail where he was confined, defendant requested her to take and keep for him the bag containing $1,300 of gold money, to the end that it might not be lost, through being left at his home at Jackson, while he was imprisoned at Lexington. It is admitted that the appellee, Mrs. Spencer, upon being thus requested to take and keep this money, accepted the same and carried it back to her home at Oakdale, Breathitt county, Ky., where she stored away for safekeeping appellant's bag of gold in her trunk, under lock and key, together with her own money which she was accustomed to store therein for safekeeping.

Appellee testified that upon two or three later occasions she visited appellant and requested him to receive back this money, as she feared it might be lost, since she was a widow, living a good part of the time alone in her home at Oakdale, where such an amount of money was not safe in being there kept by her, but that appellant declined to accept back the money bailment and requested her to continue keeping it for him. She further testified that in September, 1931, the appellant, while unwilling to let her give him back the money she was keeping for him, yet asked that she give him a receipt therefor, showing that she held the money as bailee for him, to the end that it might not be claimed by her estate in the event of her death while so holding it.

With the view of carrying out this express wish of the appellant, she visited the appellant on September 16, 1931, when he wrote out on a small slip of paper an acknowledgment—at least he, she testifies, so represented it to her—that she held his $1,300 of gold money only as a bailee for safekeeping, which she signed. She states that the slip of paper, so represented as being only a receipt, was signed by her, at appellant's

request, without reading it. It is further stated that some four days after signing this paper, her home in Oakdale, at about 1 o'clock of the Sunday night next following, was burglarized, when the trunk in which she kept her and the appellant's money was broken into and both his bag of gold money and some $210 of her own money were taken therefrom by two men, whom she that night saw running from her home, but that these men were never apprehended nor the stolen money recovered.

Some three days after this occurrence, she states the appellant wrote her, requesting that she return him his bag of money left with her, when she informed him that she could not make the demanded return because of its loss by theft as stated.

It appears that upon this occasion a considerable exchange of incriminating charges and accusations was indulged in and that shortly thereafter the appellant brought this action upon the writing executed by appellee to him on September 16, 1931, as a receipt or note—as the case may be—which by its terms is as follows:

"Received of A. H. Hargis, $1,300.00 in gold for safekeeping and loan, payable on demand with 6% interest.
"9-16-31                              Lillie Spencer
"Witness E. I. Dawkins."

On the back of this writing was the following indorsement:

"Credit this note $500.00, for note executed by A. H. Hargis to Lillie Spencer, which is to be delivered to A. H. Hargis, immediately. Balance to be paid in cash with 6% interest on demand.
"Sept. 16, 1931
"Witness: E. I. Dawkins."

The appellant, by his petition, alleged that he had demanded payment of this note from the defendant, Lillie Spencer, and that she had refused to pay same or any part of same except the sum of $500, which it is admitted he was then owing her and for which he had given her his note in such amount and which, he alleges, she had agreed, when executing the note sued on, should be credited as a payment thereon.

The defendant by answer and counterclaim and also by amended answer and counterclaim entered a plea of

non est factum to the note sued on, denying that she had executed the writing in the form in which same appeared when sued on or that she agreed at such time, or at any time, to convert her holding of the plaintiff's $1,300 as a gratuitous bailment into a loan from him of the amount or that she had agreed to the entering of the plaintiff's $500 indebtedness then owing her as a credit or payment made by her upon the alleged loan of the $1,300 money bailment then made her or that she ever made any agreement, then or at any time with the appellant, whereby she was subsequently to hold the said bailor's $1,300 of gold money, intrusted to her for safekeeping, as a loan from appellant, but that the writing was, when signed by her, represented to be, and signed by her as being, only a receipt or acknowledgment by her that she held, not as owner but only in bailment for the plaintiff, the $1,300 which she had previously, at his request, accepted for safekeeping from him. Further she testified that the said writing, when signed by her, recited only that she had "received from A. H. Hargis $1,300 in gold for safekeeping" and that the further words appearing in the writing "and loan, payable on demand with 6% interest" were, after her signing of the paper or purported receipt, fraudulently added thereto by plaintiff. Further, she pleaded that if these words fraudulently inserted in the writing to change its character from that of a receipt into a note were not so subsequently added thereto, that they were written into the instrument signed by her through the fraud and deceit of the plaintiff to wrongfully make it one different and contrary to the representations then made to her to induce her to sign the writing as being only a receipt for the money thereby acknowledged held by her in bailment for the plaintiff.

Upon the trial of the cause, upon the issues submitted, the jury—under the insructions of the court—found a verdict for the defendant in the sum of $500 and interest, upon which judgment was entered, directing that the writing sued on by plaintiff be canceled and the petition dismissed and that the defendant, Lillie Spencer, recover of the plaintiff the sum of $500 with 6 per cent. interest from September 30, 1930, until paid, together with her costs.

Plaintiff's motions and grounds for a new trial being overruled, he prosecutes this appeal seeking a reversal of the judgment.

. Numerous assignments of error are made attacking the propriety of the court's judgment, which we do not regard it needful to here set out seriatim, as we are of the opinion that they may be more clearly considered and disposed of when grouped and discussed together under the heads: (1) As to whether or not, conceding that there was here a gratuitous bailment of the $1,300 in question made for the benefit of the plaintiff bailor to the defendant, she did, after so receiving his fund as bailee, exercise that degree of care for its safekeeping as is imposed by the law applicable in such case to her status as a gratuitous bailee; (2) whether or not, after so receiving, as a gratuitous bailee, appellant's money in question, she and the plaintiff did thereafter, by reason of their alleged making of a subsequent agreement, change their legal relation of balior and bailee into the new and different relation of creditor and debtor —that is to say, did appellee in September, 1931, change her responsibility for the return of appellant's money from that of a gratuitous bailee to that of a borrower, by reason of her alleged later borrowing of the fund in her hands as bailee from plaintiff and her alleged execution to him of the writing sued on as her note; and (3) did the complained of instructions as given by the court, particularly the criticized instruction No. 2, rightly state the applicable law of the case.

As to the first point, it is admitted by the evidence that there was here a bailment by appellant of his bag of gold money to bailee, made for his benefit and upon his request that she take and keep it for him—without compensation therefor—until he should call for its return; also, that she, as a bailee, upon such terms accepted the bag of money and carried the same back to her home in Oakdale, where she stored it in her trunk, kept at her home under lock and key and wherein she kept stored with it for safekeeping her own money, all conducing to show that she exercised the same degree of care for the safety of appellant's money as she observed under the same circumstances in the safekeeping of her own money.

Appellant, however, contends that her placing of his bag of money in her trunk along with her own money amounted to a confusing and mingling by her of his money with her own and, as such, ipso facto, constituted a conversion by her as bailee of his money as a matter of law, which rendered her liable instantly, from the

time of such mingling of their moneys, as an insurer of its return rather than only responsible as a bailee for its safe return upon demand.

We cannot agree with appellant in this contention and deem it a sufficient answer thereto that we do not find in the record any evidence of any mingling, mixing, or using by appellee of appellant's bag of money intrusted to her keeping with her own private funds. The mere fact of the bailee having placed appellant's bag of money in the trunk along with her own money kept locked therein was clearly not such a mingling or mixing of their moneys as would have prevented defendant's later return upon demand of the specific bag of gold money which was intrusted to her by plaintiff. There is here no evidence even suggested that she emptied appellant's money bag or mixed its gold contents with her own money kept in the trunk or did anything serving to confuse the identity of plaintiff's money with that of her own. The rule of law applicable to a wrongful mixing and mingling of the funds or property of another by a bailee with his own, with the purpose or effect of avoiding and preventing the later identification of the bailment, and especially when such mixing is coupled with the bailee's use and appropriation of the mixed funds, is that such wrongful mingling and using constitutes a denial of the bailor's title to the property, and, as such, is held to be a conversion of the property and that the bailee, by reason thereof, thereby made himself—through its wrongful appropriation—his bailor's debtor therefor or an insurer of its return. No such situation is presented by the evidence found in the instant case. There is neither pleading nor evidence here to the effect that the bailee at any time attempted, either by mixing plaintiff's funds with her own or by their use, to appropriate the money intrusted to her or to dispute plaintiff's title thereto. On the contrary, the defendant testified that upon several occasions, after having so received the money, she had sought to have the plaintiff take it back for the reason that she feared it was unsafe in its keeping by her in the trunk against its loss by theft or other hazard.

Appellee's position being, according to the evidence, thus one of a gratuitous bailee of the money, our inquiry then becomes, Was the degree of care exercised by her in its safekeeping commensurate with the care imposed by law upon her as a bailee of such status? As-

to this, we entertain no doubt that such care as was here shown without contradiction to have been exercised by appellee was not only commensurate with the degree of care imposed upon her by law as a bailee of such status but that she exercised an even greater degree of care for its safekeeping and return than is required of a gratuitous bailee, holding property for the sole benefit of its bailor. As was said in the case of Kierce's Adm'r (Trevathan), etc., v. Farmers' Bank, 174 Ky. 22, 191 S. W. 644, 646, 4 A. L. R. 1180:

> "The duties of a bailee without compensation and for the mere accommodation of the bailor have been laid down in many cases by this and other courts. The liability of the bailee in bailments like this is very well set forth in 5 Cyc. 186, where it is said: 'Where the bailment is one which is for the sole benefit of the bailor, it is uniformly held that the bailee is obligated only to the exercise of slight care, and is answerable only for gross neglect or bad faith.' Supporting this rule are: Green v. Hollingsworth, 5 Dana, 173, 30 Am. Dec. 680 [1 Am. Neg. Cas. 771]; United Society of Shakers v. Underwood, 9 Bush, 609, 15 Am. Rep. 731; Ray v. Bank of Kentucky, 10 Bush, 344; Dunn v. Kyle, 14 Bush, 134; Kowing v. Manly, 49 N. Y. 192, 10 Am. Rep. 346; Jenkins v. Bacon, 111 Mass. 373, 15 Am. Rep. 33 [1 Am. Neg. Cas. 781]."

Also see for further statements of the rule as to the duty and liability of a gratuitous bailee 3 R. C. L., sec. 21, p. 92, where in support of the text, in note No. 1 thereto, there is cited among others the case of Lewis v. L. & N. R. Co., 135 Ky. 361, 122 S. W. 184, 25 L. R. A. (N. S.) 938, 21 Ann. Cas. 527. Also see section 24, page 99, of the same volume where the general rule, in harmony with that given in the Trevathan Case, supra, as to the liability of gratuitous bailees, is stated.

As it is admitted in the instant case that the defendant accepted appellant's money for safekeeping, with only the implied responsibility therefor imposed by law upon her as a gratuitous bailee thereof, or without having any express contract providing special terms as to her care or responsibility for its safe return, we are fully satisfied that the care exercised by her in its safekeeping was fully commensurate with, if it did not exceed, the degree of care imposed by the applicable rules

above cited. Having reached such conclusion as to this, it follows that she therefore was without responsibility for the loss of the money committed to her keeping, unless she is shown to have made an agreement or contract with appellant subsequent to the original bailment, whereby she expressly contracted to exercise either a higher degree of care for the safekeeping and return of this money intrusted to her or assumed the enlarged responsibility of an insurer at all hazards for its return upon demand.

Appellant contends that the defendant is here shown by the evidence to have so enlarged her responsibility to keep and return the property as an insurer, by reason of her making the alleged contract of September 16, 1931, when she executed the writing herein sued on, whereby she promised to pay with interest to the plaintiff "the sum of $1,300 received by her for safekeeping and as a loan."

It may be conceded that the parties had the right and authority to change their existing legal relations of bailor and bailee, assumed by them under the original bailment, by a later or subsequent contract, providing for a different or new relationship of creditor and debtor as to this money. Therefore, the question now becomes whether or not the bailee did, as testified and pleaded by the appellant, in September, 1931, execute a note to the appellant, promising to pay to him the $1,300 then held in bailment by her, as a loan then by their agreement made her in such amount. The money in such instance would have passed in its ownership from the bailor to her as borrower, with the result that she would thereafter hold it as the owner and debtor therefor rather than as the bailee of appellant and, as such debtor, have become unconditionally obligated to return or make payment of the amount stated to him according to the terms of her contract, as evidenced by the note alleged given therefor.

The appellee, however, contends she made no such contract, changing her status from that of bailee to debtor, nor did she execute any note or the alleged writing as a note evidencing such terms or assumption of a new status by her. The evidence given by and for the appellant and appellee as to the making of such claimed subsequent agreement is altogether contradictory and in direct conflict. The wording of the writing here sued

on as a note, it may be here observed, constitutes somewhat of a departure from the usual and customary form employed in the drawing of a note executed for the payment of money loaned, in that the writing which appellant testifies was signed by the appellee as a note, promising to pay the appellant money loaned the maker, recites that she, the maker, has ''received of A. H. Hargis $1,300 in gold, for safekeeping and loan.'' This recital made of the moneys having been received of the appellant for safekeeping by her, as well as a loan, is to say the least unique and prompts the inquiry as to why one would undergo the expense of procuring a loan of money just for its safekeeping, which might, without the expense of paying interest, be a care left safely reposed in its lender. This unusual recital of the writing lends some support to appellee's contention that the writing was when so drawn intended to evidence the fact that the appellee had received the stated amount from the defendant for its safekeeping as a bailee rather than for its safekeeping as a borrower of the amount. At any rate, the issue was raised by the parties' conflicting testimony as to whether or not she had entered into a new agreement with the appellant, under which she thereafter held the money, then in her hands as bailee, as a borrower of the amount or whether the instrument sued on was, as by the appellee claimed, written—and by her signed—only as a receipt acknowledging appellant's ownership of this money held in bailment by her. This was a question of fact, for which there existed sufficient evidence in support of the contentions of either to sustain a finding by the jury in favor of either theory. This issue of fact was submitted to the jury under what we conceive were proper instructions given by the court as to the law covering the evidence and opposing theories advanced thereunder by the parties. The jury found a verdict thereon in favor of the defendant—or that the appellee had not executed the note sued on nor authorized the entering of the $500 owing her by appellant as a credit upon the receipt. The court by its instruction No. 2, objected to by appellant as erroneous, told the jury that if they should believe from the evidence that the $1,300 in question was not a loan made to the appellee but that it was only given to the defendant for safekeeping, to be returned to appellant on demand, and so continued until the time of the robbery, if there was one, that in such event it was the duty of the defendant to use that degree of care and

diligence which under similar circumstances a person of ordinary prudence and care would use with reference to the money in question if it had been her own property, and that, unless they further believed from the evidence that the defendant had used such care for the preservation of said money, they should find for the plaintiff.

We are of the opinion that such instruction, imposing upon the appellee as a bailee such degree of care for the preservation of the money intrusted to her, was even more favorable to the appellant than he was entitled to under the applicable rule of law quoted above, as the appellee, holding the fund only as a gratuitous bailee for the sole benefit of the bailor, was obligated only to exercise slight care in the preservation of the property intrusted to her or was answerable for its loss occurring only through gross negligence or bad faith, whereas the rule as to bailee's responsibility as announced in the instruction as given imposed on appellee the duty devolving on a bailee to exercise that degree of care which under similar circumstances a person of ordinary prudence would use in reference to the money had it been her own property—that is, to exercise "ordinary care" for safe-keeping the money, which is the degree of care imposed upon a bailee where the relation of bailor and bailee exists for hire or for their mutual benefit, whereas a lower or slight degree of care is, according to the general rule, applicable to or required of a gratuitous bailee holding for the sole benefit of the bailor.

Further, by instruction No. 1, the court told the jury that if it believed from the evidence that at the time of the writing in question, dated September 16, 1931, it was agreed between plaintiff and defendant that defendant was to take the $1,300 in gold as a loan, with an agreement to repay said money, the jury should find for the plaintiff in the sum of $1,300, subject to the credit of $500 admitted as then owing by appellant to appellee. Neither has the lower court, nor have we, the right or authority to assume the province of a jury and ourselves pass upon this question of fact as to whether or not the appellee did by the terms of the writing sued on in fact make such writing or new contract, undertaking as a debtor to repay to appellant the money then held by her as bailee. The finding of the jury in favor of the defendant on this issue cannot be said to be, if at all, flagrantly against the evidence nor was the con-

flicting evidence of the parties as to the making of this writing such as entitled the appellant to ask for a peremptory instruction.

In view of the conclusions we have reached upon these material and pivotal issues upon which we regard the case as turning, we are of the opinion that the rulings, instructions, and judgment of the learned trial court were proper and that being in harmony with our views as above announced, appellant's objections thereto are without merit and are not to be sustained. Therefore, the judgment is affirmed.