**PARKRITE AUTO PARK, Inc. v. BADGETT.**

Court of Appeals of Kentucky.

Sept. 28, 1951.

Rehearing Denied Dec. 21, 1951.

Fowler & Fowler and Dailey & Fowler, Lexington, for appellant.

Stoll, Keenon & Park, Robert F. Houlihan and John L. Davis, Lexington, for appellee.

MOREMEN, Justice.

Plaintiff, Ross C. Badgett, Jr., a traveling salesman, parked his car in defendant's parking lot at the corner of Walnut and Main Streets in Lexington at 7:46 in the evening of Dec. 29, 1947. During the night his car was stolen in which he had samples and personal effects. He recoverd judgment for $792.95 against defendant, of which $442.95 represented damages done his car and the loss of its use, and the remaining $350 was for the personal property in the car which was not returned with the stolen vehicle.

In seeking to reverse the judgment defendant insists: 1. Its general demurrer should have been sustained to the petition as amended; 2. it was a gratuitous bailee of the personal property in the car and is chargeable with exercising only "slight care"; 3. its contract with plaintiff was set out on the parking ticket, which limits its liability to $100; 4. instruction No. 3 was erroneous; 5. the proof does not sustain the damages the verdict gave.

The petition as amended averred plaintiff presented his car at defendant's lot and received from one of its attendants and agents a parking ticket. He told this attendant his car contained a large quantity of personal property and the attendant, acting within the scope of his authority, assured plaintiff his personal property would be safe and plaintiff agreed to pay the customary parking charges. His car and its contents were stolen during the night by a part-time employee of defendant, who was not on duty when the crime was committed. The petition sets out specifically the damages plaintiff suffered by reason of the theft.

Defendant relies upon Barnett v. Latonia Jockey Club, 249 Ky. 285, 60 S.W.2d 622, as supporting its contention that the petition as amended did not state a cause of action. The facts in the instant case distinguish it from the Barnett case. That opinion shows Mrs. Barnett paid the regular admission fee to the Latonia Race Track, but no parking fee, and was directed by one of its servants where to park her car from which a valuable mink coat and other property were stolen while she and her husband were watching the races. As pointed out in the opinion, Mrs. Barnett did not plead a specific contract of bailment based upon a specific and independent consideration for the parking of her car, as did plaintiff in the instant case. The Barnett opinion discusses Pennyroyal Fair Ass'n v. Hite, 195 Ky. 732, 243 S.W. 1046, and distinguishes the averments in Mrs. Barnett's petition from those in the Hite pleading on the same ground that we distinguish the averments in the petition in the instant case from those in the Barnett pleading. Here, plaintiff pleaded

a specific contract of bailment based upon an independent consideration, while Mrs. Barnett's petition contained no such averment.

■ We are unable to agree with defendant that the evidence shows the bailment of the personal property was a gratuitous one. Plaintiff testified that when the attendant took his car he informed the attendant of the contents of the car and the latter replied, "It will be all right", and handed him the parking ticket. Manifestly, defendant was a bailee of the car for a consideration and when its employee acting in the line of duty agreed that the personal property would be safe in the vehicle, he enlarged his master's liability on the contract of bailment of the car and extended it to cover the personal property in the car. See the Hite case, 195 Ky. 732, 243 S.W. 1046.

The cases of Hargis v. Spencer, 254 Ky. 297, 71 S.W.2d 666, 96 A.L.R. 903, and Webb v. McDaniels, 305 Ky. 739, 205 S.W. 2d 511, relied upon by defendant to support its contention that it was only a gratuitous bailee of the personal property, have no application here since in those cases the bailments were for the sole benefit of the bailees without consideration moving to the bailors, therefore they were gratuitous, placing on the bailees only the duty of using slight care to preserve the property. But in the instant case a consideration was paid to the defendant bailee to care for the car which was extended to the personal property by the specific agreement its servant made with plaintiff.

It is next insisted by defendant the entire contract was set out in the parking ticket which limited its liability to $100, unless a greater consideration was paid by plaintiff for additional coverage, and the court should have given defendant's instruction limiting its liability to $100. The parking ticket reads:

"In consideration of the low rates charged for parking, customer agrees that parking operator will not be responsible for loss by fire, misdelivery or theft except such loss be occasioned by negligence of operator, and then only up to a maximum value of $100.

"Proportionately greater rates must be paid in advance if customer sets larger limits of liability.

"Articles left in car at owner's risk."

■ Defendant relies upon 6 Am.Jur. "Bailments" § 178, p. 296, to the effect that where qualifying provisions are contained in what is recognized by both parties as the contract of bailment, the bailor is charged with notice thereof whether or not he knows of the particular provisions or reads them. But the very next section of that text states "the trend of the more recent authorities is to the view that receipt from the bailee at the time of the bailment of what is ostensibly a token for later identification of the bailed property does not bind the bailor as to provisions, purportedly limiting the bailee's liability, which are printed thereon, where his attention is not called to them and he has no actual knowledge at the time of the bailment that they are supposed to become a part of the contract."

■ Plaintiff's uncontradicted testimony is that his attention was not called to the $100 limitation of defendant's liability and he had no knowledge of it. Therefore, the court properly refused to give defendant's offered instruction limiting its liability to that sum. Denver Union Terminal Railway Co. v. Cullinan, 72 Colo. 248, 210 P. 602, 27 A.L.R. 154; Dodge v. Nashville, C. & St. L. R. R. Co., 142 Tenn. 20, 215 S.W. 274, 7 A.L.R 1229. It was pointed out in the Cullinan opinion that in bailments for hire in the course of bailee's general dealing with the public, contracts limiting liability for negligence are generally considered against public policy.

It is argued by defendant that the court erred in giving instruction No. 3, which is to the effect that if the jury believe its employee agreed that defendant in consideration of the usual parking fee would keep the contents of his automobile and return same to him, which it failed to do, then the jury should find for plaintiff such sum as will compensate him for the lost articles, because this made defendant an insurer of the contents of the car. While plaintiff insists that as the motion and grounds for

new trial only complained of instructions No. 1 and No. 2 given by the court, any error in instruction No. 3 was waived, since no mention was made of it in the motion, citing Bland v. Gaither, 11 S.W. 423, 10 Ky.Law Rep. 1033, and Perkins-Bowling Coal Corp. v. Maryland Casualty Co., 246 Ky. 493, 55 S.W.2d 378.

Defendant admits this is the general rule, but contends as its motion objected to the court refusing to give its instruction B, which relieved it of liability for the contents in the car unless it was grossly negligent in caring for them, the court's attention was called to the alleged error in the third instruction making defendant an insurer of the articles in the car. Without deciding whether defendant's objection in the motion for new trial called the court's attention that instruction B raised the point that instruction No. 3 was erroneous, we are of the impression that instruction No. 3 was properly given. Plaintiff testified that in consideration of his paying the regular parking fee, defendant acting through its agent made a special contract with him to safely keep and return the personal property in the car. The third instruction correctly submitted to the jury the question of whether or not this special contract was made relative to the items in the car and told the jury if it found such a contract was entered into, then defendant's liability is for the value of such personal property, not to exceed $543.18.

We cannot agree with defendant that the proof does not sustain the damages the verdict gave. True, the testimony of plaintiff, that the expense of $151.95 in returning the car to him in Knoxville, Tennessee, from Texas, is not as specific as it might have been. However, plaintiff stated that the item was made up of transportation of his agent to Texas, his meals and expenses, including railroad fare to Texas and the expense of driving the car back as well as the agent's salary. The jury knew, as do we, that for a person to make a trip from Knoxville to Texas and drive a car back to that city would cost approximately $150. Plaintiff testified that it cost him $91 to rent a car for two weeks, which he drove approximately 100 miles a day during the time his car was gone. Paul Utterback, who operates a Chrysler U-Drive-It in Lexington, Kentucky, testified that his rates were higher than car rentals in Knoxville, Tennessee, but the $91 would be reasonable for a traveling salesman to pay for a car for 12 days. Likewise, plaintiff qualified as a witness as to the value of his car upon its return to him, since he stated what he paid for it as a new car 60 days before it was stolen, its damaged condition upon being recovered, and that it had been driven by the thief 3,500 miles. Furthermore, he stated he had bought and sold several cars.

Finding no prejudicial error in the record, the judgment is affirmed.